Filed 6/21/13  In re Isabel C. CA2/4

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| In re ISABEL C.,<br><br>a Person Coming Under the Juvenile Court Law. | B247936<br>(Los Angeles County<br> Super. Ct. No. CK79718) |
| M.T.,<br><br>     Petitioner,<br><br>     v.<br><br>THE SUPERIOR COURT OF<br>LOS ANGELES COUNTY,<br><br>     Respondent;<br><br>LOS ANGELES DEPARTMENT OF<br>CHILDREN AND FAMILY SERVICES,<br><br>     Real Party in Interest. | |

ORIGINAL proceeding for extraordinary writ.  Marilyn Mordetzky, Referee.  Writ denied.

Law Office of Marlene Furth, Danielle Butler Vappie and Sue Dell for Petitioner.

No appearance for Respondent.

John F. Krattli, County Counsel, James M. Owens, Assistant County Counsel, and Aileen Wong, Deputy County Counsel, for Real Party in Interest.

In this extraordinary writ proceeding, M.T. (mother) challenges the juvenile court's finding and order at a hearing under Welfare and Institutions Code[1] section 366.21, subdivision (f), that the Los Angeles Department of Children and Family Services (the Department) provided her reasonable family reunification services and that mother's reunification services would be terminated. Mother contends there was insufficient evidence to support the court's finding, and even if there was sufficient evidence, the court abused its discretion by failing to consider ordering an additional six months of services in light of the Department's failure to provide reasonable services during previous reporting periods. We conclude there was sufficient evidence to support the juvenile court's finding, and that the court did not abuse its discretion by not ordering additional services. Accordingly, we deny the writ.

## BACKGROUND

This matter is before us for the second time. In March 2011, mother filed a petition for extraordinary writ after the juvenile court ordered termination of reunification services at a section 366.21, subdivision (f) hearing on January 31, 2011. Shortly after the writ petition was filed, the parties filed a joint application and stipulation for reversal, agreeing that the order terminating services should be vacated and that mother should receive six months of reunification services. On March 30, 2011, we issued an order reversing the January 31, 2011 order and remanding the case to the juvenile court with directions to provide mother with six months of reunification services and, following those six months, to hold another hearing under section 366.21, subdivision (f). The instant writ petition involves the findings and order made at the subsequent hearing. Because of the history of

---

[1] Further undesignated statutory references are to the Welfare and Institutions Code.

this case and the issue currently before us in this writ proceeding -- whether the Department provided reasonable reunification services after the case was remanded -- we need not discuss in detail the facts of the case prior to our March 30, 2011 order.

Mother's children, Isabel (born in October 1997) and Nataly (born in March 1999), came to the attention of the Department in October 2009, after mother was arrested for neglect under Penal Code section 273a, subdivision (a). Peace officers went to the family's home following a report that mother had punched a window in her apartment, causing the glass to break. The officers questioned mother, who was incoherent. They observed that the home was filthy and bug infested. There was a strong foul odor, spoiled food everywhere, and trash and clothing strewn about. The children told one of the officers that mother was not providing food, shelter, clothing, or supervision, and was physically abusing them. The children were taken into protective custody, and the Department filed a petition under section 300. The children were ordered detained.

At the Pretrial Resolution Conference (PRC), the court sustained counts alleging that (1) mother "suffers from periods of confusion, mental and/or emotional instability, and/or memory loss" and has inflicted physical abuse on the children; (2) mother "has exhibited bizarre behavior," has locked the children out of the home on several occasions, and has failed to provide for the children's food, clothing, or medical care while the children resided with unrelated adults; (3) mother "established a filthy and unsanitary home environment" for the children; and (4) the children's father and mother have a history of engaging in violent altercations.[2] The court declared the children dependents of the court under

---

[2]     At the time of the PRC, the whereabouts of the children's father were unknown. The Department learned from his mother that he had been deported to Mexico, but she did not have his address or telephone number.

3

section 300, subdivisions (b), (g), and (j), and ordered reunification services to be provided to mother, including parenting education and individual counseling to address anger management, domestic violence, and case issues. In addition, the court ordered mother to submit to psychological/psychiatric evaluation and treatment as recommended.

At the time of the PRC, mother was still incarcerated, under an immigration hold. In March 2010, the Department learned that mother was being held at the United States Customs and Immigration Detention Center in Eloy, Arizona. She was ordered deported to Mexico on April 29, 2010, but she filed an appeal and remained in custody until July 15, 2010, when she was deported. In the meantime, in January 2010, the children were placed with a non-related extended family member, Tanisha H., a former neighbor who took care of the children on those occasions when mother locked them out of their home or failed to care for them.

By the time of the original 12-month review hearing in January 2011, mother had had very little contact with the Department and had been provided virtually no reunification services, due primarily to her incarceration and deportation. Mother was living in a small town in Mexico, and her only access to a telephone was a local town telephone; if she received a call on that telephone, someone from the town would contact her. Despite the very limited contact the Department had with mother up to that point, the juvenile court found that the Department had provided reasonable services. The court also found that mother was not in compliance with her case plan, and terminated her reunification services. As noted above, mother filed a petition for extraordinary writ and, based upon the parties' joint application, this Court issued an order on March 30, 2011,

4

reversing the juvenile court's order with directions to provide an additional six months of services, followed by a new 12-month review hearing.

The day after we issued our order, the social worker assigned to the case spoke to mother by telephone. Mother told the social worker that she had an appointment with a psychologist, scheduled through DIF[3] in the City of Zihuatanejo, and she would see what services they could provide at that time. The social worker reminded mother that the juvenile court had ordered her to attend a parenting program and individual counseling to address various issues, and also ordered her to submit to a psychological/psychiatric evaluation with treatment as recommended. The social worker also noted that the court ordered weekly monitored telephone contact with the children, and told her that the children's caregiver would contact her on a weekly basis so she could talk with her children.

Following issuance of the remittitur, on April 14, 2011, the juvenile court ordered the Department to provide six months of reunification services and set a 12-month review hearing under section 366.21, subdivision (f) in October 2011. The court ordered the Department to establish contact with DIF and ensure that referrals and services were being provided to mother.

Despite the court's orders, more than two months elapsed before the Department made any effort to provide services. Finally, on June 24, 2011, the social worker assigned to the case attempted to call mother in Mexico. He spoke with mother's sister, who told him mother was living in another town; she gave him a telephone number to contact her. The social worker attempted to call that number two weeks later, but the call did not go through. Seven weeks later, he attempted to call again, but did not reach her. He called again three weeks after the

---

[3]    DIF is the acronym of an agency in Mexico, Desarrollo Integral de la Familia (translated as Integral Family Development). It is a national public assistance institution that focuses on strengthening and developing the welfare of Mexican families.

previous attempt. On that day, September 12, 2011, he spoke to another of mother's sisters, who told him mother was in another village and could be contacted on a public telephone there. He attempted to contact her at that number that same day, but the call would not go through. Three weeks later, on October 4, the social worker called the number for mother and got her voicemail. He left a message asking mother to call him. He then attempted to call the psychologist mother had told a different social worker on March 31, 2011 she was going to see, but the number was incessantly busy. He tried to call the psychologist again on October 11 (the week before the scheduled 12-month review hearing), but again, the call would not go through. In short, between the time the juvenile court ordered the Department to provide reunification services to mother and the date of the review hearing, the Department made limited efforts to speak to mother or the psychologist she purportedly saw, all of which were unsuccessful. During this same period, the children attempted to call mother eight times, and were able to speak to her once; mother and the children also exchanged letters once.

In its report for the scheduled hearing, the Department reported that the children had adjusted well to their foster home and they each emphatically stated that they wanted to live with their foster mother (who said she was willing to adopt them) and did not want to live with mother. The Department recommended termination of reunification services.

The 12-month review hearing was continued to December 7, 2011 for a contested hearing, and the Department was ordered to file a supplemental report by November 22 to address all of its efforts to involve and contact DIF and to provide reunification services for mother in Mexico. In its November 22 supplemental report, the Department listed all of its attempts to contact mother and/or DIF in Mexico since the matter was remanded. In addition to the contacts or attempted contacts discussed above, the Department reported the following.

6

A week after the October 18, 2011 hearing, mother's counsel left a message for the social worker, stating that she had spoken to mother; counsel provided the telephone number where mother could be reached. The social worker called mother the same day. Mother told the social worker that she enrolled in a domestic violence class and a parenting class. When the social worker asked if she had been receiving psychiatric evaluation or counseling, mother initially said she did not need a psychiatric evaluation, but when reminded that the court had ordered it, she said she was receiving ongoing services from a psychologist. The social worker asked her to give him the name, address, and telephone number for the service providers so he could confirm her participation, but she told him she did not have that information at that time, and asked him to call her back in a half hour. When he tried to call her back, there was a busy signal both times the number was called.

The social worker attempted to call mother the next day, twice in the morning and twice in the afternoon, but the number was busy each time. He tried several times again over the next two days, but none of the calls went through. Four days later, on October 31, the social worker conducted an internet search to try to find an address or telephone number for the DIF office in Zihuatanejo, Mexico; it appears he was not successful.

The social worker was able to reach mother again on November 7, 2011. He told her he had been trying to reach her to get the contact information for the therapist she had been seeing, which she had promised to provide. Mother told him she had the information at her house, and went to retrieve it. She returned to the telephone 15 minutes later, and told the social worker she did not have a key to the house and therefore could not give him the information. He asked her to give her the name of the therapist in the meantime, but mother did not respond. He could hear the sounds of children in the background as he called out "Hello, hello," but mother did not say anything. Eventually he heard the sound of the telephone

7

disconnecting. An hour later, he called back, and mother answered. She told him the earlier call had been cut off. Mother offered to go and get the telephone number of the therapist, but the social worker insisted that mother first provide him with the therapist's name and the number of sessions she attended. Mother then gave him the therapist's name (Arturo Sanchez) and telephone number, as well as the name of the clinic and the town in which it is located. She told him she attends two sessions per week, and that she also takes parenting classes and domestic violence classes. When asked if she had submitted to a psychological/psychiatric evaluation, she told the social worker that her therapist told her she did not need to do so. In response to the social worker's statement that she was required by a court order to submit to such an evaluation, mother said that she had never been informed of that order.

The following day, the social worker called the number mother had provided for the therapist. A recording stated that the number could not be reached at that time, and instructed the caller to call back later. That same day, the social worker conducted an internet search to find the telephone number for the director of municipal health services for the city of Zihuatanejo, Mexico, in order to verify the whereabouts of mother's therapist, Arturo Sanchez. He called the number listed on the city's website, but the number was not functioning. He then sent an email to the address listed on the website for the director of municipal services.

The following day, the social worker again called the number mother had given to him for her therapist. Once again, there was a voice recording instructing the caller to call back at another time. He tried that number once more a week later, with the same result.

The 12-month review hearing was continued once again, to January 26, 2012. In its report for that hearing, the Department provided updates on its continuing attempts to provide services and/or verify mother's participation in

services since the previous hearing on December 7, 2011. On December 8, the social worker attempted to call mother, but the telephone lines to Mexico were overloaded, and the call could not be completed. He tried to call a week later, but the call did not go through after several attempts. He tried again on December 27, but got a recording stating that the number could not be reached at that time, and instructing the caller to call back later.

The social worker called again on January 10, 2012, and was able to talk to mother. He confirmed that mother had received the notice of the last hearing, and told her she would soon receive a notice of the next hearing (which had been mailed the day before the conversation). He asked mother whether she was taking any classes on domestic violence or parenting, and whether she had been evaluated by a psychiatrist. She told him she was receiving the classes with psychologist Arturo Sanchez and that he told her she did not need to see a psychiatrist. The social worker again reminded mother that the court had ordered her to be evaluated by a psychiatrist. When the social worker asked for Sanchez's telephone number, mother said she had to go get it. She returned to the phone a few minutes later with the number. The social worker then called that number, but the person who answered said there was no one there by the name of Arturo Sanchez; the person said the number reached was a telephone booth. We note that the number indicated by the social worker in the report is the same number he had called to reach mother.

The 12-month review hearing was continued several more times. Shortly before one of the continued hearings, the Department filed a last minute information with the court, discussing the Department's efforts to contact DIF in Mexico. The Department explained that the social worker went to the office of the Consulate General of Mexico in Los Angeles on March 6, 2012, to obtain an official explanation of the function of DIF. He met with the consul of legal affairs

9

on March 14, who told him about the procedure used to forward information to DIF regarding a Mexican citizen, and gave him the name and telephone number of the person in Los Angeles who is familiar with the procedure and acts as the liaison. The social worker called that number several times and left voicemail messages, but at the time of the report he had not received a response from the liaison.

The court held the contested hearing on April 4, 2012, and found that the Department had not made reasonable efforts to comply with the case plan. It ordered the Department to provide a progress report on its efforts to contact DIF in Mexico, and to facilitate telephone contact for the children with mother with a written telephone schedule to allow for contact once a week. The court set a date for another hearing in October 2012, and stated that the hearing would still be a section 366.21, subdivision (f) hearing in light of its finding of no reasonable services.

In the progress report filed in compliance with the court's order, the Department reported that the social worker obtained from the Los Angeles liaison, Nilda Roos, the telephone number of the DIF in the state of Guerrero, Mexico. He called that number on April 13, 2012 and spoke to Gretel Davila from the office of the coordinator general of human rights for the city of Costa Chica; the office is part of DIF. Davila agreed to obtain information about mother's participation in therapy with psychologist Sanchez, and asked for a copy of the court order documenting the programs that mother was required to complete. The social worker sent Davila an email a few days later with the requested information. On April 18, the social worker received an email from Davila stating that she had

confirmed with the head of the psychology department that mother was receiving therapy, and she would send him an official document to that effect.[4]

The Department's progress report also detailed mother's telephone and written contacts with the children from April 2011 to April 2012. The report shows that, from April 22, 2011 through March 2012, the children called mother eight times, but were able to reach her only one of the times, mother called and spoke to the children twice, the children sent three letters to mother, and mother sent one letter to the children and a birthday card to Nataly.

The Department filed another report in advance of the scheduled section 366.21, subdivision (f) hearing on October 3, 2012. It reported that the social worker tried to call the telephone number for Gretel Davila on May 14, June 21, June 27, July 23, and July 31, but could not get through because either the number could not be connected or there was a continuous busy signal. He called the liaison, Nelda Roos, twice to see if there was another number, but he was told that he just had to keep calling over and over until he got through. He sent letters on July 23, August 8, August 14, August 28, and September 24 to the coordinator for the Office of Defense of the Minor to solicit their assistance in obtaining information on the status of mother's participation in the court-ordered services. Finally, he sent another email to Gretel Davila on September 6, asking for assistance. Apparently, he did not receive any responses to his written inquiries.

The status review report for the October 3 hearing also included a list of telephone and attempted telephone contacts between the children and mother. It showed that the children or their foster mother attempted to call mother 19 times between April 9, 2012 and September 15, 2012, and spoke to mother only one of those times; the other times, there was no answer, the telephone was busy, or

---

[4]    It is not clear whether the social worker received that official document; there is no such document in the record.

11

someone answered but said that mother was not there. The list also showed that mother called the children three times, although she did not talk to the children one of those times because they were at school.

The October 3, 2012 hearing was continued to November 19, 2012, due to improper notice to mother. The hearing was continued two more times, again due to improper notice to mother, and once more due to the illness of mother's counsel. It finally was held on February 13, 2013. At that hearing, counsel for mother conceded that the allegations against mother were fairly severe, that mother was "not a meritorious client for reunification," and that the Department had attempted to do everything it was required to do during the six-month period from April 2012 to October 2012. But she argued that it could have done more. She criticized the Department for not following up more often when calls to DIF did not go through, and not sending a letter directly to the therapist mother was seeing, after the social worker's correspondence to the Mexican agency asking for updates on mother's participation in programs produced no response. Finally, she noted that the Department had made no further attempts to contact DIF (or to ensure telephone contact between mother and the children) since the Department filed its report in advance of the October 3, 2012 hearing.

The juvenile court found the Department had made reasonable efforts to provide services, and mother was not in compliance with her case plan. In doing so, the court noted that mother had made no effort to provide information to the Department or to assist the Department in verifying her participation in the court-ordered programs. The court also found there was not a substantial probability that the children could be returned to mother before the 18-month review hearing, ordered termination of reunification services, and set a date for the selection and implementation hearing under section 366.26. Mother challenges that order in this writ proceeding.

# DISCUSSION

A.    *Reasonable Reunification Services Were Provided Under the Circumstances*

Mother contends there was insufficient evidence to support the trial court's finding that reasonable reunification services were provided to mother. We disagree.

When a child is removed from a parent's custody, the responsible agency must make a good-faith effort to develop and implement reasonable family reunification services responsive to the needs of that family. (*In re Kristin W.* (1990) 222 Cal.App.3d 234, 254.) "The adequacy of a reunification plan and of the department's efforts are judged according to the circumstances of each case. . . . 'The effort must be made to provide suitable services, in spite of the difficulties of doing so or the prospects of success. [Citation.]' . . . '[T]he record should show that the [department] identified the problems leading to the loss of custody, offered services designed to remedy those problems, maintained reasonable contact with the [mother] during the course of the service plan, and made reasonable efforts to assist the [mother when] compliance proved difficult. . . .' [Citation.]" (*In re Ronell A.* (1996) 44 Cal.App.4th 1352, 1362.)

"When a finding that reunification services were adequate is challenged on appeal, we review it for substantial evidence." (*In re Alvin R.* (2003) 108 Cal.App.4th 962, 971.) "[T]his court must view the evidence in a light most favorable to the respondent. We must indulge in all reasonable and legitimate inferences to uphold the judgment. [Citation.] 'If there is any substantial evidence to support the findings of a juvenile court, a reviewing court is without power to weigh or evaluate the findings.'" (*In re Ronell A.*, *supra*, 44 Cal.App.4th at pp. 1361-1362.)

At the outset, we must acknowledge that, although this case presented some unusual challenges due to mother's incarceration, deportation, and ultimate residence in a small town in Mexico, the Department's efforts to provide services to mother during the first two and a half years fell far short of what was required of it. But those two and a half years -- from October 2009 to April 2012 -- are not at issue in this writ proceeding. Rather, the relevant period is the period for which the juvenile court found the Department had provided reasonable services, i.e., April 2012 to October 2012. And the record shows that the Department made significant, although ultimately unsuccessful, efforts to provide services to mother under challenging circumstances.

For example, the social worker assigned to the case spoke with a coordinator at a DIF office in April 2012 to confirm that mother was receiving therapy. The social worker attempted to obtain additional information about mother's progress and her participation in other court-ordered programs by calling the coordinator once in May, twice in June, and twice in July, but the calls would not go through; he contacted the Los Angeles liaison to see if there was a different number he could call, but was told there was not. He then sent five letters and an email over the course of the next two months, seeking that information, but received no response.

The social worker was unable to confirm mother's participation in therapy and programs directly with the provider because mother apparently did not give the provider's correct contact information to the social worker. Indeed, it appears that mother may have sought to avoid giving the information to the social worker. When she first told the social worker about her participation in therapy and programs, she could not provide the name or contact information of the provider, and asked him to call back; when he did so later that day (twice) and over the next two days, the line was busy. When he finally was able to reach her again a few

14

days later, she told him she could not give him the contact information because it was at her house and she did not have a key; when he asked for the name of the therapist, she did not respond. An hour later, in another telephone call, mother finally provided the therapist's name and telephone number (as well as the name of the clinic and the town in which it is located), but every time the social worker called that number, there was a recording stating that the number could not be reached at that time. During a telephone call a few months later, mother gave the social worker another number for the therapist, but when the social worker called it, he was told that he had reached a public telephone booth.

In light of mother's apparent evasiveness and the Department's repeated, though largely unsuccessful, attempts to contact -- by telephone, mail, and email -- the agency in Mexico charged with assisting and protecting the welfare of families, there was little more the Department could do to provide services to mother, short of having a social worker travel to Mexico to meet with mother and her providers personally. The Department was not required to do this. "The requirement that reunification services be made available to help a parent overcome those problems which led to the dependency of his or her minor children is not a requirement that a social worker take the parent by the hand and escort him or her to and through classes or counseling sessions." (*In re Michael S.* (1987) 188 Cal.App.3d 1448, 1463, fn. 5.)

We concede that the outcome here is far from ideal. But as one court has observed, "we must . . . recognize that in most cases more services might have been provided, and the services which are provided are often imperfect. The standard is not whether the services provided were the best that might have been provided, but whether they were reasonable under the circumstances." (*Elijah R. v. Superior Court* (1998) 66 Cal.App.4th 965, 969.) Under the circumstances of this case, we conclude there is substantial evidence to support the juvenile court's

finding that the Department made reasonable efforts to provide services to mother between April 2012 and October 2012.

B.      *The Court Did Not Abuse its Discretion by Failing to Order Additional Services*

Mother contends the juvenile court did not believe it had discretion to order an additional six months of reunification services, and abused its discretion by terminating services and setting a section 366.26 hearing.  We find no abuse of discretion.

Under section 366.21, subdivision (g), if a child is not returned to the parent's custody at the section 366.21, subdivision (f) hearing, the juvenile court may order an additional six months of reunification services, but only if the court finds there is a substantial probability that the child will be returned to the physical custody of his or her parent within those six months.  (§ 366.21, subds. (g)(1), (2).)  However, in order to make that finding, there must be evidence that, among other things, the parent consistently and regularly contacted and visited the child (although the statute directs the court to take into account any barriers to the parent's ability to maintain contact or visit with the child due to the parent's arrest and/or deportation).  (§ 366.21, subds. (g)(1), (3).)

In this case, the record shows that, even taking into account the barriers to contact due to mother's deportation to Mexico, mother did little to maintain contact with her children.  In the nearly two years from the time mother's first petition for extraordinary writ was filed to the order at issue in this proceeding, mother called and spoke with the children a total of four times (she was unable to speak to them on another occasion because they were at school when she called).  She spoke to them on two other occasions when the children called her (they placed 25 additional calls, but were unable to reach her).  Even if the blame for the lack of

16

telephonic communication could be placed upon mother's lack of funds or difficulties with the Mexican telephone system, mother could have maintained regular contact with the children by mail, but did not do so.  In fact, the record shows that over the course of those two years, mother sent a single letter to the children and one birthday card to Nataly.  In light of mother's failure to maintain regular contact with the children, we conclude the juvenile court did not abuse its discretion by terminating mother's reunification services and setting a section 366.26 hearing.

## DISPOSITION

The petition for extraordinary writ is denied.  Our May 3, 2013 order staying the section 366.26 hearing is hereby vacated.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

WILLHITE, J.

We concur:

EPSTEIN, P. J.

MANELLA, J.

17