Filed 7/1/13  Douglas M. v. Superior Court CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| DOUGLAS M. et al, | D063633 |
| Petitioners, | |
| v. | (San Diego County Super. Ct. No. NJ14663) |
| THE SUPERIOR COURT OF SAN DIEGO COUNTY, | |
| Respondent; | |
| SAN DIEGO COUNTY HEALTH AND HUMAN SERVICES AGENCY, | |
| Real Party in Interest. | |


Proceedings for extraordinary relief after reference to a Welfare and Institutions Code section 366.26 hearing.  Blaine K. Bowman, Judge.  Petitions denied.

Amanda J. Gonzales for Petitioner Douglas M.

Elizabeth Klippi for Petitioner Rachel P.

Thomas E. Montgomery, County Counsel, John E. Philips, Chief Deputy County Counsel, and Paula J. Roach, Deputy County Counsel, for Respondent.

Douglas M. and Rachel P. seek writ review of orders terminating their reunification services and setting a Welfare and Institutions Code[1] section 366.26 hearing regarding their son, Caleb R. Douglas argues he was not provided with reasonable reunification services. Rachel joins in and adopts Douglas's arguments and asks that her services be continued if Douglas's petition is granted. We deny the petitions.

FACTUAL AND PROCEDURAL BACKGROUND

On June 11, 2012, the San Diego County Health and Human Services Agency (the Agency) petitioned on behalf of two-year-old Caleb under section 300, subdivision (b), alleging he was at substantial risk of serious harm because Douglas, while driving a car in which Caleb was a passenger, displayed a gun to a passenger in another car and drove at excessive speed; the car contained illegal drugs; Caleb tested positive for methamphetamine; and Douglas was arrested on drug-related charges. The petition further alleged Douglas and Rachel admitted using amphetamine and methamphetamine on a regular basis. The court ordered Caleb detained in foster care.

One year earlier, Douglas had been arrested for possessing and selling prescription pills and marijuana, and Rachel had been arrested for child endangerment because marijuana accessible to Caleb was found in the family home. Douglas then served eight months at the Vista Detention Facility (Vista), but, after he was released in January 2012, he and Rachel returned to using methamphetamine together.

---

1       Statutory references are to the Welfare and Institutions Code.

2

At the jurisdictional and dispositional hearing in July 2012, the court found the allegations of the section 300, subdivision (b) petition to be true, declared Caleb a dependent of the juvenile court, removed him from parental care and ordered reunification services for Douglas and Rachel. Douglas was in custody at Vista at the time of the hearing.

In mid-October 2012, Douglas was transferred to the California Institute for Men in Chino (Chino). He was housed in the reception area, where he was not eligible for services. In February 2013, he was moved to Chuckawalla Valley State Prison in Blythe, California (Blythe). Meanwhile, Rachel had not been following through with the substance abuse treatment she was offered. In February, she was arrested for being under the influence of a controlled substance.

At the six-month review hearing on March 21, 2013, the court heard testimony from the social worker and from Douglas. After considering the testimony, the documentary evidence and argument by counsel, it found the Agency had offered or provided reasonable reunification services, but Douglas and Rachel had not made substantive progress with the provisions of their case plans. The court terminated reunification services and set a section 366.26 hearing.

## DISCUSSION

Douglas contends there was not substantial evidence presented to support the finding he received reasonable reunification services. He argues the social worker did not make sufficient efforts to help him obtain services or visitation while he was at

3

Chino, and she did not send him a parenting prison packet until just before the six-month hearing. Rachel joins in and adopts his arguments.

In determining the sufficiency of reunification services the role of the appellate court is to decide "whether the record discloses substantial evidence which supports the juvenile court's finding that reasonable services were provided or offered." (*Angela S. v. Superior Court* (1995) 36 Cal.App.4th 758, 762.) The standard is not that the best possible services were provided, but that reasonable services were provided under the circumstances. (*In re Misako R* (1991) 2 Cal.App.4th 538, 547.) The appellant bears the burden to show the evidence is insufficient to support the court's findings. (*In re Geoffrey G.* (1979) 98 Cal.App.3d 412, 420.)

Soon after Caleb was taken into protective custody, the social worker met with Douglas at Vista and they discussed his reunification plan. She advised him to focus on recovering from his drug addiction and reliance on a criminal lifestyle and to use the resources that were available to him at Vista. Douglas told her he had signed up for Alcoholics Anonymous/Narcotics Anonymous (AA/NA) meetings, had enrolled in a program at Vista called "Thinking for Change," and he had been given additional privileges because of his good behavior. The social worker provided Douglas and Rachel with referrals to services, including a list of shelters, emergency food assistance, substance abuse treatment centers and a list of AA/NA meetings. She also gave them a booklet guide to services and reviewed the booklet in detail.

Present at a team decision-making meeting on June 10, 2012, were two social workers, Rachel, the maternal grandparents and paternal grandparents, and a hospital

4

staff member. Douglas was able to participate briefly by telephone from Vista. Issues discussed at the meeting included Douglas's drug use and the actions that had led to his incarceration and to Caleb's removal. The paternal grandparents said they would provide transportation for Caleb to visit Douglas in custody.

Douglas was not in custody two days later on June 12, and he attended the detention hearing that day. The court made voluntary services available and told Douglas he needed to start those services immediately and had only six months to make progress.

After Douglas's incarceration, the Agency prepared a revised case plan for him that reflected the fact that he was in custody. This plan was attached to the July 23, 2012 addendum report that the court received into evidence at the dispositional hearing, and the court ordered Douglas to comply with its provisions. The plan stated Douglas needed to participate in individual therapy, a parenting course, random drug testing, a substance abuse recovery program and to follow recommendations by the substance abuse specialist. The objectives of the plan were that he live free from drug dependency, follow the conditions of his probation or parole, meet Caleb's needs and be an appropriate parent, and develop a positive support system. When Douglas was placed in custody, a provision was added to require him to participate in all comparable reunification services available to him at his detention facility and upon release to immediately enroll in all planned client services. Douglas's case plan properly provided for the services that would address the issues that had led to Caleb's dependency. It described the treatment that was required, but also stated that if the specified treatment was not available while he was incarcerated, he was to participate in all comparable services available to him.

5

When Douglas was transferred to Chino in October 2012, the social worker wrote to him and telephoned the prison. She learned no services were available to him there, and the investigator for Douglas's counsel confirmed that he was not able to attend any services during the time he was in reception at Chino.

Douglas objects that the social worker waited to send him a prison parenting packet until January 2013. Although there was a delay in Douglas receiving the packet, he can point to no prejudice. He also notes that the social worker did not contact the authorities at Chino to see if he could send tapes to Caleb, she did not arrange to send materials to him at the prison to read to Caleb on tape, and she did not inquire about what written materials were available or send him written counseling or drug rehabilitation materials or additional parenting booklets and tests. Douglas's services plan stated he should participate in all comparable services available to him at his facility and gave examples, such as parenting, 12-step meetings, and a program called "Read to Your Child by Tape." The social worker sent letters to him reminding him of what he needed to do in order to reunify with Caleb. It was Douglas's obligation to look for the appropriate services available to him.

Douglas also claims the Agency did not adequately assist him with visitation. While Douglas was at Vista, Caleb came to visit him once each week. At Chino, Douglas was not allowed to telephone Caleb, and the paternal grandfather said that when he went to see Douglas at Chino, their visit had been through a small hole. The social worker submitted request forms to Chino for Caleb to visit, and the paternal grandfather was willing to transport him, but the request had not been approved by the time Douglas

6

was moved to Blythe.  After Douglas's transfer to Blythe, the social worker contacted authorities there to request Caleb be allowed to visit and she filed the necessary forms. Douglas began making telephone calls to Caleb, but by the time of the six-month hearing, the social worker had not yet received a reply to her request for visitation.

In view of the total circumstances of this case, we conclude the record supports the court's finding that Douglas was provided with reasonable reunification services and visitation with Caleb, and the social worker made adequate efforts to assist him.  It was Douglas's own criminal conduct that placed him in custody, where he was unable to take advantage of services the Agency could provide.  (*Elijah R. v. Superior* Court (1998) 66 Cal.App.4th 965, 971.)  He has not shown error.

## DISPOSITION

The petitions are denied.

McCONNELL, P. J.

WE CONCUR:

NARES, J.

McINTYRE, J.