[No. B110625. Second Dist., Div. Seven. Aug. 19, 1998.]

ELIJAH R., Petitioner, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent;
LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND
FAMILY SERVICES et al., Real Parties in Interest.

## COUNSEL

Mitchell L. Beckloff for Petitioner.

No appearance for Respondent.

De Witt W. Clinton, County Counsel, Auxiliary Legal Services, Jill Regal and Kristine Miles for Real Parties in Interest.

## OPINION

**WOODS, J.**—Petitioner Elijah R. is the father of Angel R., a child who has been declared a dependent of the juvenile court. In the instant proceeding, Elijah seeks extraordinary review by writ (Cal. Rules of Court, rule 39.1B) of the juvenile court's order setting a hearing under Welfare and Institutions Code section 366.26[1] for the selection and implementation of a permanent plan for Angel, with the possibility of termination of the parental relationship. Elijah, who was incarcerated during a significant portion of the dependency proceedings, contends he was not provided reasonable reunification services by the Los Angeles County Department of Children and Family Services (the Department), especially during the period in which he was incarcerated. We will deny the petition, as there is substantial evidence in the record to support the juvenile court's finding that adequate reunification services were offered to Elijah under the circumstances of this case.

### FACTS

Angel first came to the attention of the Department when she was born in November of 1994 with prenatal exposure to drugs and a positive toxicology screen for PCP. A petition filed by the Department pursuant to section 300 alleged Angel's mother tested positive for cocaine and PCP at the time of Angel's birth, and further alleged that Elijah had failed to take action to protect Angel, that he should have known the mother was using drugs, and that both parents had a lengthy history of drug abuse and drug-related arrests. The record shows Elijah, who told the Department's social worker he was aware of the mother's drug use, had a 20-year criminal history including numerous arrests and convictions for narcotics offenses, robbery, battery, burglary, theft, and weapons offenses.

At the arraignment hearing, the juvenile court released Angel to Elijah on the condition the mother not live in the home, and Elijah was ordered to

---

[1] All statutory references are to the Welfare and Institutions Code.

undergo drug testing and to attend counseling. The dependency petition was thereafter sustained, Angel was permitted to remain in Elijah's home, and the Department was given discretion to permit the mother to move back into the home upon her satisfactory compliance with drug counseling, drug testing, and parenting counseling.

The Department's report for the six-month review hearing advised that Elijah was unemployed, and he and Angel were living rent-free in the home of Elijah's mother, who was in a convalescent home. The Department further reported that although the mother, who like Elijah was unemployed, had failed to comply with the court's order for drug counseling and had submitted a dirty drug test for cocaine and PCP, Elijah had permitted her to move into his residence without the Department's prior approval. At the hearing, the court ordered the Department to verify within three weeks that the mother had enrolled in a drug treatment program and that her drug tests were clean, otherwise the Department was given discretion to remove Angel from the home. Three weeks later the Department filed a supplemental petition (§ 387) alleging the mother had failed to comply with the court's orders. Angel was thereupon removed from her parents' custody, upon the court's finding there was substantial danger to her physical and emotional safety.

Neither parent appeared for the disposition hearing on the supplemental petition. The court sustained the petition, finding Angel's well-being was placed at risk by the mother's substance abuse, by both parents' failure to protect her, and by Elijah's physical abuse of the mother and his failure to visit Angel at the maternal grandmother's home, as reported by the Department. The court further found reasonable efforts had been made and family maintenance services had been provided by the Department. The court proceeded to continue its prior orders for treatment and counseling, also adding an order requiring Elijah to undergo domestic violence counseling.

Approximately one month later, having failed to enroll in any program, Elijah became incarcerated in Las Vegas, Nevada on federal narcotics charges including conspiracy to distribute PCP. As of the six-month review hearing on the section 387 petition, the Department reported its efforts to contact Elijah at the Nevada prison had been unsuccessful, hence reunification could not be realized. At the hearing, Elijah's counsel disclosed he too had not heard from Elijah, and counsel did not know whether Elijah was in a state or federal prison, whether any treatment programs were available at the facility, or when Elijah would be released. Angel's counsel thereupon advised that she had learned Elijah's trial in Nevada had not yet taken place.

Based on this uncertain state of the record, the court determined that although there were many unanswered questions, there were no reunification services which the Department could provide to Elijah in view of his out-of-state incarceration. The court continued its order for reunification services however, and directed Elijah's counsel and the Department to attempt to make contact with Elijah. The matter was continued for the 12-month review hearing.

The Department's report for the 12-month review hearing indicated Elijah, who remained in pretrial custody at the Nevada facility on federal narcotics charges, had written to his attorney stating he wanted custody of Angel given to an unrelated caretaker. The Department further reported it had conducted an investigation, and had determined the person named by Elijah was not an appropriate caretaker. At the hearing, the court noted Elijah's letter clearly indicated he did not seek to have Angel returned to him, and he was thus not interested in reunification. After Elijah's counsel stated she did not wish to be heard on the matters, the court made its finding, by clear and convincing evidence, that the reunification services provided by the Department had been reasonable. The court proceeded to set a date for a hearing pursuant to section 366.26.

## DISCUSSION

■ When we review a sufficiency of the evidence challenge, we may look only at whether there is any evidence, contradicted or uncontradicted, which supports the trial court's determination. We must resolve all conflicts in support of the determination, and indulge in all legitimate inferences to uphold the court's order. Additionally, we may not substitute our deductions for those of the trier of fact. (*In re Katrina C.* (1988) 201 Cal.App.3d 540, 547 [247 Cal.Rptr. 784]; *In re John V.* (1992) 5 Cal.App.4th 1201, 1212 [7 Cal.Rptr.2d 629].) ■ And, in reviewing the reasonableness of the reunification services provided by the Department, we must also recognize that in most cases more services might have been provided, and the services which are provided are often imperfect. The standard is not whether the services provided were the best that might have been provided, but whether they were reasonable under the circumstances. (*In re Misako R.* (1991) 2 Cal.App.4th 538, 547 [3 Cal.Rptr.2d 217].)

■ The record in this case, as outlined above, reveals the services offered to Elijah by the Department were reasonable and appropriate under the circumstances (*In re Christina L.* (1992) 3 Cal.App.4th 404, 416-417 [4 Cal.Rptr.2d 680]; *In re Jasmon O.* (1994) 8 Cal.4th 398, 424-425 [33

Cal.Rptr.2d 85, 878 P.2d 1297]), but that Elijah showed little willingness to utilize those services, and that he violated the juvenile court's orders by permitting Angel's mother to move into his home without the Department's prior approval.

From the time the case first came to the Department's attention, the Department provided Elijah with an array of services, including parenting education, domestic violence counseling, drug counseling, and drug testing. The record also shows however that during the entire period from the date Angel was removed from Elijah's custody until he became incarcerated, Elijah refused even to visit with Angel, who was then placed with her maternal grandmother. Nor did Elijah participate in counseling of any kind during this period.

Elijah specifically contends insufficient services were provided to him *while he was incarcerated*, based on the criteria set forth in section 361.5, subdivision (e). The statute provides an incarcerated parent may be required to attend counseling and parenting classes as part of the service plan "*if these programs are available*," (italics added) and sets forth the following additional activities which may become a part of an incarcerated parent's service plan:

"(A) Maintaining contact between parent and minor through collect telephone calls.

"(B) Transportation services, *where appropriate*.

"(C) Visitation services, *where appropriate*.

"(D) Reasonable services to extended family members or foster parents providing care for the minor if the services are not detrimental to the minor." (§ 361.5, subd. (e)(1), italics added.)

The record in this case shows that Angel was one year old when Elijah became incarcerated. Telephonic contact would thus have been meaningless, as Angel's age would have precluded any communication. Nor were transportation or visitation services appropriate, in view of Elijah's distant out-of-state incarceration and Angel's young age. (See *In re Jonathan M.* (1997) 53 Cal.App.4th 1234, 1238 [62 Cal.Rptr.2d 208].) We also note that Elijah's own counsel, in response to the juvenile court's statement at the

12-month review hearing to the effect the Department could not have arranged for visitation at a Las Vegas facility, expressly stated that only telephone contact would have been possible under the circumstances. As we have noted however, any such telephone contact would not have been meaningful or appropriate in view of Angel's very young age. And finally, we note the Department expressly requested, in a report to the court, that the court make an exception to visitation while Elijah remained incarcerated in the Nevada facility, and Elijah's counsel did not object to the Department's request.

Elijah further claims the record does not evidence any contact by the Department with the Nevada prison or with Elijah himself at the prison. The record however discloses that the Department made several attempts to contact Elijah in Nevada during his incarceration, and that the one time Elijah did contact the social worker, his sole concern was with the *mother's* enrollment in a drug treatment program. The record thus shows the following: Elijah never expressed interest in receiving services for himself; he showed almost no interest in the ongoing dependency proceedings; he failed to appear for the disposition of the section 387 petition; as of the six-month review hearing he had had no contact with his own attorney since his incarceration; when he finally stated a view as to Angel's placement, Elijah made no attempt to seek custody but instead requested Angel be placed with an unrelated caretaker; and the Department promptly acted on Elijah's request, but its investigation revealed the person named by Elijah was not an appropriate caretaker for Angel. Based on Elijah's request for placement of Angel with another person, the juvenile court properly determined Elijah was not interested in reunifying with Angel.

The record in this case paints a picture of a father who, as the result of his criminal activities which had been ongoing for 20 years, fathered a child and then promptly reoffended, with the result that he was confined for the greater part of the reunification period in a distant, out-of-state prison. By his own actions, Elijah thus placed himself out of the reach of any meaningful rehabilitative services which the Department could have provided. (See *Steve J. v. Superior Court* (1995) 35 Cal.App.4th 798, 812-813 [41 Cal.Rptr.2d 731].) Under these circumstances, there is substantial evidence in the record to support the juvenile court's finding that the services provided by the Department to Elijah were reasonable under the circumstances of his case. (*In re Misako R., supra,* 2 Cal.App.4th 538, 547.)

## DISPOSITION

The petition is denied on the merits.

Lillie, P. J., and Johnson, J., concurred.