Filed 5/31/13  Shaun G. v. Superior Court CA5

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| SHAUN G. et al.,<br><br>        Petitioners,<br><br>    v.<br><br>THE SUPERIOR COURT OF STANISLAUS COUNTY,<br><br>        Respondent;<br><br>STANISLAUS COUNTY COMMUNITY SERVICES AGENCY,<br><br>        Real Party in Interest. | F066918<br><br>(Super. Ct. Nos. 516000 & 515998)<br><br><br>**O P I N I O N** |

## THE COURT[*]

ORIGINAL PROCEEDINGS; petition for extraordinary writ review.  Ann Q. Ameral, Judge.

Nadine Salim for Petitioner, Shaun G.

Alistair Sheaffer for Petitioner, Nicole G.

No appearance for Respondent.

John P. Doering, County Counsel, and Robin Gozzo, Deputy County Counsel, for Real Party in Interest.

-ooOoo-

---

[*]     Before Kane, Acting P.J., Franson, J., and Peña, J.

Petitioners Shaun G. and Nicole G. challenge the juvenile court's orders issued at a contested six-month review hearing (Welf. & Inst. Code, § 366.21, subd. (e))[1] terminating their reunification services and setting a section 366.26 hearing as to their three-year-old son, Elijah, and two-year-old daughter, Hannah. Shaun contends the juvenile court erred in finding he failed to regularly participate and make substantive progress in his court-ordered services. Nicole contends the juvenile court erred in finding she was provided reasonable services.

Shaun and Nicole each filed a petition for extraordinary writ (Cal. Rules of Court, rule 8.452) asking this court to vacate the juvenile court's orders terminating their reunification services and setting a section 366.26 hearing. We deny the petitions.

## PROCEDURAL AND FACTUAL SUMMARY

This is the second dependency proceeding involving this family. The first was initiated in San Diego County in October of 2010 when Shaun's mother contacted the Chula Vista Police Department to check on Shaun's welfare. She said he called her in distress after finding out that Nicole was "cheating on him." The responding officer reported that Shaun put holes in the door and walls of the home with his fist and head. The officer also noted that there were pills on the kitchen counter within Elijah's reach.

Shaun told the officer he took care of the children while Nicole worked. He said he had a brain injury from a car accident when he was 19 years old that impaired his memory. He admitted using methamphetamine prior to Elijah's birth but denied subsequent use.

Nicole, on the other hand, said Shaun used methamphetamine on the weekends when she was home to care for the children. She said he acted out routinely and

---

[1] All further statutory references are to the Welfare and Institutions Code unless otherwise indicated.

threatened to kill her. Nicole adamantly denied any form of substance abuse. She was drug tested and tested negative.

The children were taken into protective custody and placed in foster care. The juvenile court exercised its dependency jurisdiction over them and ordered Shaun to complete drug treatment and a neuropsychiatric evaluation. The juvenile court also ordered Nicole to participate in weekly Al-Anon meetings and both of them to submit to random drug testing.

In December 2010, Shaun was evaluated by Dr. David Fox, a neuropsychologist, to determine what effect, if any, his car accident had on his cognitive ability. Dr. Fox opined that Shaun's cognition was "normal and intact," however his short-term memory was mildly impaired. Dr. Fox further stated that despite Shaun's assertions of sobriety, Shaun was at risk for substance abuse. Dr. Fox cautioned that it was crucial that Shaun permanently avoid using alcohol and recreational drugs.

In January 2011, the case was transferred to Stanislaus County where Shaun and Nicole were living separately. In February 2011, the Stanislaus County juvenile court (hereafter "the juvenile court") adopted a reunification plan that required Shaun and Nicole to complete the services previously ordered as well as domestic violence counseling.

After 12 months of services, Shaun and Nicole made sufficient progress that the Stanislaus County Community Services Agency (agency) recommended the juvenile court place the children with them under family maintenance. Notably, Shaun completed residential and outpatient drug treatment and tested negative for drugs. He and Nicole completed nearly half of their 52-week domestic violence program and Nicole was participating in Al-Anon meetings and testing negative for drugs. In addition, Shaun and Nicole were living together and had been caring for the children on a trial basis since

August 2011. The agency reported Shaun and Nicole were committed to each other and there were no concerns about the children's safety in their custody.

In October 2011, the juvenile court returned Elijah and Hannah to Shaun and Nicole's custody under family maintenance. In April 2012, the juvenile court dismissed its dependency jurisdiction.

In June 2012, Shaun and Nicole's neighbor found then three-year-old Elijah and one-year-old Hannah wandering in the street unattended. The neighbor recognized the children and took them home. Shaun and Nicole were home but appeared to have been sleeping when they opened the door. They did not know the children were outside. The neighbor contacted the agency.

Shaun and Nicole told the social worker they did not know the children could get out of the back yard and would install door alarms. The social worker did not remove the children but over the following week conferred with other agency staff to determine if family maintenance services were appropriate for the family. During that week, Shaun admitted that he used methamphetamine in June 2012. The social worker asked him to leave the home for a few days until the agency decided how to intervene. He left, spent one night away and returned. The social worker obtained protective custody warrants and removed the children. Shaun remained in the home with Nicole.

In July 2012, the agency filed a dependency petition on the children's behalf, alleging Shaun relapsed and he and Nicole failed to supervise the children. The juvenile court ordered the children detained and set the jurisdictional/ dispositional hearing for July 30, 2012. At Shaun and Nicole's request, the children were placed with their former foster mother with whom they developed a close bond.

On July 19, 2012, a reporting party informed the agency of Nicole's disclosure that she and Shaun were using methamphetamine. The reporting party was concerned that the agency was not aware of Nicole's drug use. On July 25, social worker Nichole

4

Cunningham instructed Nicole to drug test. There is no evidence in the record that Nicole complied.

In August 2012, the juvenile court adjudged the children dependents and ordered Shaun and Nicole to participate in reunification services. Shaun's reunification plan required him to participate in individual counseling, complete a drug and alcohol assessment, and submit to random drug testing. Nicole's plan required her to complete a clinical assessment, participate in individual counseling and Al-Anon meetings, and submit to random drug testing. The juvenile court set an interim review hearing for November 2012 and the six-month review hearing for January 2013.

Shaun completed a drug and alcohol assessment and was referred to Nirvana for outpatient drug treatment. He entered the program but was discharged in early October 2012 because he relapsed. He was re-referred to Nirvana for residential drug treatment but refused to go.

In its interim review report, the agency stated that Shaun and Nicole were living together. Nicole told the social worker she blamed herself for Shaun's relapse. She said she had friends over occasionally and they drank alcohol. Shaun started drinking with them and then relapsed. Nicole realized she could no longer drink so she obtained a sponsor and began attending Alcoholics Anonymous (AA) meetings.

On November 7, 2012, at the interim review hearing, Shaun admitted using methamphetamine in October 2012. The juvenile court admonished him regarding his progress and ordered the agency to drug test him.

In late November 2012, Nicole tested positive for barbiturates. She told social worker Erica Delgadillo she was stressed and unable to sleep because of Shaun's relapse and that a neighbor gave her a sleeping pill. Ms. Delgadillo told her not to take the prescription medication of others and said she would consult with their social worker, Vanesa Cardenas, as to what to do.

On December 7, 2012, Shaun told Cardenas he found Nicole with three other people passed out from using drugs. He and Nicole argued and she left to use drugs. He also stated one of the males punched him in the face and he had a black eye. About two hours later, Shaun left Cardenas a message saying that he lied about Nicole out of retaliation. Later that day, he and Nicole visited the children. Shaun arrived 20 minutes late with a black eye and Nicole looked "messy." Nicole tested positive for barbiturates and disclosed that she drank alcohol two to three times a week. She and Shaun allowed the children to take all the games apart and throw the pieces all over the room. Three days later, Nicole arrived 20 minutes late for a visit looking "frazzled." She allowed the children to do whatever they wanted.

On December 17, 2012, after Nicole missed several scheduled visits with the children, Delgadillo asked Nicole to drug test. After much persuasion, she complied. Nicole missed another visit on December 21. She later called and asked for separate visits because she was divorcing Shaun.

On January 2, 2013, Cardenas received the results of the drug screen Nicole submitted on December 17, 2012. The results were positive for methamphetamine.

On January 14, 2013, Nicole met with Cardenas for their monthly meeting. Nicole admitted using drugs and said she was overwhelmed with separating from Shaun and had not thought about her services. She said she realized Shaun was emotionally abusive and she found a man that treated her much better. Cardenas told her to attend meetings immediately and get back into services.

Shaun's progress over this same time period was not much better. After refusing to enter Nirvana, Shaun was admitted to Stanislaus Recovery Center in November 2012, but discharged after approximately two weeks because of an anger outburst and noncompliance. Within a week, he was admitted to the Salvation Army residential drug treatment program. On January 16, 2013, Shaun was discharged from the Salvation

6

Army program for having matches and a cigar. He said he did not know that he was not allowed to have them.

On January 18, 2013, the agency filed its report for the six-month review hearing in which it recommended the juvenile court terminate Shaun and Nicole's reunification services and set a section 366.26 hearing to consider a permanent plan of adoption.

On January 22, 2013, Nicole asked Cardenas for a referral for an alcohol and drug assessment. The referral was completed on January 25, 2013. On January 30, 2013, Nicole told the foster mother that Elijah and Hannah were "drug babies."

On January 31, 2013, Nicole's attorney requested a contested six-month review hearing. It was set for March 1, 2013.

On February 4, 2013, Nicole attended her monthly meeting with Cardenas. Nicole stated that she was attending Narcotics Anonymous and Al-Anon meetings. She said she had not yet made an appointment for an alcohol and drug assessment but was trying. Nicole tested in early February and the results were negative.

In March 2013, the agency filed an addendum report updating the juvenile court on Shaun and Nicole's compliance. The agency reported Shaun and Nicole were testing negative for drugs and visiting the children separately. Shaun was participating in an outpatient drug treatment program and Nicole completed one individual counseling session.

The agency also filed a neuropsychological evaluation of Shaun conducted by Dr. Randall Epperson in February 2013. Dr. Epperson opined that Shaun's short-term memory deficit by itself would not prevent him from safely parenting his children. However, Dr. Epperson believed Shaun's pattern of relapse would continue without some form of external controls and monitoring.

On March 18, 2013, the juvenile court convened the contested six-month review hearing. Shaun and Nicole argued the juvenile court should continue their reunification

7

services because the agency did not address Nicole's drug problem and Shaun made substantial progress in his services plan.

Vanesa Cardenas testified Shaun was doing well in drug treatment and attended two individual counseling sessions. She said Nicole completed a drug and alcohol assessment and it was recommended that she attend several interim group sessions and then complete an intake. She said Nicole completed her intake appointment and was scheduled to start treatment.

Cardenas testified about Nicole's positive drug test results and what she did in response to them. She said the agency knew in November 2012 Nicole was taking barbiturates without a prescription but did not refer her for an alcohol and drug assessment because Nicole said it was a "one-time thing." After Nicole tested positive for barbiturates on December 7, Cardenas spoke to Nicole about her drug use. Nicole told her she had a prescription and would provide Cardenas a copy. When by December 17 she had not done so, Cardenas asked her to submit a hair follicle for testing. Cardenas received the results on January 2, 2013, and they were positive for methamphetamine. She said she gave Nicole a referral for an alcohol and drug assessment on January 23. Asked why it took her so long, Cardenas said she "just didn't get around to it." She said Nicole completed her assessment on February 19.

Cardenas further testified Nicole did not disclose having a substance abuse problem and did not appear to be under the influence of any substances.

Shaun testified that he had been clean and sober since January 10, 2013, filed for divorce on January 27 because Nicole was living with another man, and started day treatment at Stanislaus Recovery Center on January 30. He was scheduled to complete the program on March 30. He also testified he had a sponsor with whom he had been working for two months and was on step 4 of the 12-step program. He also said he attended four to five AA meetings a week.

8

Shaun also testified the juvenile court should extend his services because his prospects for sustained recovery were better than before. He realized his relationship with Nicole was unhealthy and he resolved to surround himself with people that supported his recovery. Also, he experienced an internal change unlike his previous attempts at recovery.

Nicole testified she had never participated in substance abuse treatment or in a 12-step program. She claimed 89 days of sobriety, was attending weekly meetings, and had a sponsor.

Nicole further testified she never had a prescription for barbiturates. She said she attended Al-Anon meetings since December 2012 but could not find her paperwork. She said she started using methamphetamine when she met Shaun eight years before. During those eight years, she used methamphetamine intermittently and had periods of sobriety including the prior dependency. She never disclosed her drug use during either dependency.

At the conclusion of the hearing, the juvenile court terminated Shaun and Nicole's reunification services and set a section 366.26 hearing. These petitions ensued.

### DISCUSSION

Shaun and Nicole contend the juvenile court erred in terminating their reunification services. We disagree.

I.    **Applicable Law**

Section 366.21, subdivision (e) governs the procedure for children like Elijah and Hannah who were under three years of age when they were initially removed from parental custody and who were not being returned at the six-month review hearing. According to the statute, the juvenile court may terminate reunification services and schedule a section 366.26 hearing if it finds by clear and convincing evidence that the parent failed to regularly participate and make substantive progress in a court-ordered

9

treatment plan. (§ 366.21, subd. (e).) If, however, the court finds the parent was not provided reasonable services or there is a substantial probability that the children could be returned to parental custody within six months, the court must continue services to the 12-month review hearing. (*Ibid.*)

Nicole contends the juvenile court erred in finding she was provided reasonable services and Shaun contends the juvenile court erred in finding he failed to participate regularly and make substantive progress in his reunification plan.

## II. Reasonableness of Services

Nicole contends the juvenile court erred in finding she was provided reasonable services. Specifically, she contends Cardenas should have identified her substance abuse problem in October 2012 when she disclosed her alcohol use and referred her for an alcohol and drug assessment. By waiting until January 2013, Nicole further contends Cardenas unreasonably delayed in providing her substance abuse treatment. Thus, she argues, the agency denied her reasonable services.

The purpose of reunification services is to reunite the family. (§ 361.5, subd. (a).) The process begins with a case plan developed by the agency and composed of specifically selected services to address the problems that resulted in the parent's loss of custody. If approved, the parent is court-ordered to comply with the plan and the agency is ordered to implement it. Implementation of the plan requires the agency to assist the parent in utilizing the services. (*In re Ronell A*. (1996) 44 Cal.App.4th 1352, 1362 (*Ronell A*.).) The juvenile court approves the plan at the dispositional hearing and at each review hearing determines whether the agency's efforts in implementing it were reasonable. (§§ 361.5, subd. (a), 366.21, subds. (e) & (f), 366.22.)

Sometimes, as happened in this case, a problem arises that did not contribute to the loss of custody but nevertheless would prevent reunification if not corrected. In such

10

cases, the agency still has a duty to help the parent address the problem. (*In re Christopher H*. (1996) 50 Cal.App.4th 1001, 1008.)

In assessing the reasonableness of reunification services, the juvenile court evaluates not only the agency's efforts to assist the parent in accessing the services but also the parent's efforts to avail him or herself of the services. (*Ronell A*., *supra*, 44 Cal.App.4th at p. 1365.)

On a challenge to the juvenile court's reasonable services finding, we view the evidence in a light most favorable to the agency, indulging in all legitimate and reasonable inferences to uphold the finding. (*In re Misako R*. (1991) 2 Cal.App.4th 538, 545.) If substantial evidence supports the juvenile court's finding, we will not disturb it. (*Ibid.*) Moreover, under our review, services need not be perfect to be reasonable. Rather, the "standard is ... whether they were reasonable under the circumstances." (*Elijah R. v. Superior Court* (1998) 66 Cal.App.4th 965, 969.) Since Nicole bears the burden of demonstrating error on appeal (*Winograd v. American Broadcasting Co*. (1998) 68 Cal.App.4th 624, 632), she must show that the juvenile court's reasonable services finding is not supported by substantial evidence. We conclude she failed to meet her burden.

Prior to January 2013, there was no demonstrable evidence Nicole required substance abuse treatment. She denied any form of substance abuse and she had no documented history of it. In October 2012, Nicole told Cardenas she occasionally drank alcohol with friends in Shaun's presence. Her purpose in telling Cardenas was to take responsibility for undermining his recovery. She did not say she had a problem with alcohol or ask for help. Instead, she wanted to assure Cardenas that she took steps to abstain from alcohol use by attending AA meetings and obtaining a sponsor. There was no reason for Cardenas to believe that Nicole had a substance abuse problem at that time or when Nicole subsequently tested positive for barbiturates. When Nicole first tested

11

positive for barbiturates, she said she was having difficulty sleeping and took a sleeping pill from her neighbor. She assured Cardenas that it was an isolated occurrence. The second time she tested positive for the drug, she said she had a prescription. Cardenas could reasonably conclude that Nicole obtained a prescription of her own.

However, when Cardenas received Nicole's positive test result for methamphetamine on January 2, 2013, there was no longer any reason to doubt the need to refer Nicole for substance abuse services. So, the real question is whether Cardenas acted unreasonably in delaying approximately three weeks to initiate a referral for a drug and alcohol assessment. While we might find Cardenas's explanation that she "didn't get to it" indefensible, as did the juvenile court, nevertheless we conclude under the circumstances her efforts were reasonable.

By arguing that Cardenas was unreasonable for not immediately referring her for an alcohol and drug assessment, Nicole presumes that the assessment was the only method for addressing her substance abuse problem. However, she does not prove that to be the case. For example, she fails to show why attending meetings and participating in her other services as Cardenas advised her to do on January 14 would not have sufficiently addressed her substance abuse problem while she waited for her referral. Further, as we stated above, a parent's efforts in utilizing services plays a part in the juvenile court's determination whether reasonable services were provided. Since Nicole apparently never attended meetings, she cannot lay full blame on the agency for any delay in addressing her substance abuse problem.

Finally, even if we credited Nicole's argument with respect to substance abuse services, we could not find on this record that the agency's efforts were unreasonable overall. Nicole was provided an array of services designed to help her reunify with her children. Those services were made available to her and she failed to participate in them.

12

Consequently, when viewed collectively vis-à-vis an integrated reunification plan, substantial evidence supports a finding that the agency's efforts were reasonable.

## III.   Regular Participation and Substantive Progress

Shaun contends the juvenile court erred in finding he failed to regularly participate and make substantive progress in his services plan. He acknowledges his drug use as the primary obstacle to reunification and points to his "unrelenting efforts" to participate in drug treatment. He claims the juvenile court ignored the progress he made in "internalizing his sobriety."

The juvenile court found Shaun made minimal progress and substantial evidence supports its finding. Though ordered to participate in drug treatment in August 2012, Shaun did not enter a program until November. By December, he had entered and been discharged from three drug treatment facilities all the while using drugs. It was not until January 2013 that he sought recovery in earnest by admitting himself for outpatient drug treatment. By the six-month review hearing in March, Shaun had approximately 60 days of sobriety and approximately two weeks to complete his outpatient drug treatment. Given Shaun's repeated unsuccessful attempts at rehabilitation, his history and his recent sobriety, the juvenile court could find he failed to regularly participate and made minimal rather than substantive progress in his services plan.

To the extent Shaun raises it, substantial evidence also supports the juvenile court's finding the children could not be returned to his custody by the 12-month review hearing. In order to establish a substantial probability of return, the juvenile court must find the parent achieved all three of the following: (1) regularly visited the child; (2) made significant progress in resolving the problems that led to the child's removal from the home; and (3) demonstrated the capacity and ability to complete the case plan objectives and provide for the child's safety, protection, and physical and emotional well-being. (§ 366.21, subd. (g)(1)(A)-(C).)

13

Contrary to Shaun's assertion, the evidence does not support any of the three required parts to a finding of substantial probability of return. According to the agency, he did not regularly visit the children. As we discussed above, he made only minimal progress in resolving his drug problem. Finally, given his longstanding pattern of relapse, it is questionable whether he could safely parent the children.

We find no error on this record.

## DISPOSITION

The petitions for extraordinary writ are denied. This opinion is final forthwith as to this court.

14