Filed 6/24/14  H.K. v. Superior Court CA1/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| H.K. et al.,<br><br>    Petitioners,<br><br>v.<br><br>THE SUPERIOR COURT OF CONTRA COSTA COUNTY,<br><br>    Respondent;<br><br>CONTRA COSTA COUNTY CHILDREN AND FAMILY SERVICES BUREAU et al.,<br><br>    Real Parties in Interest. | A141428<br><br>(Contra Costa County<br>Super. Ct. No. J12-00188) |

**INTRODUCTION**

Petitioners H.K. and C.V. (Father and Mother), each filed California Rules of Court rule 8.452 petitions seeking a writ directing the trial court to vacate its order setting a Welfare and Institutions Code section 366.26[1] hearing in regard to their daughter, L.K. Mother claims no substantial evidence supports the court's finding of substantial risk of detriment to L.K. if returned, or its finding the Contra Costa County Children and Family Services Bureau (Bureau) provided reasonable services.  She also asserts the court abused its discretion in refusing to extend reunification services.  Father likewise claims no substantial evidence supports the finding the Bureau provided him reasonable services,

---

[1] All further statutory references are to the Welfare and Institutions Code unless otherwise indicated.

1

and also contends the court's evidentiary rulings denied him due process. We conclude none of these claims have merit, and deny the petitions and the requests for stay of the section 366.26 hearing.

## PROCEDURAL AND FACTUAL BACKGROUND

When L.K. was two months old, the Bureau filed a dependency petition alleging failure to protect the minor and her nine-year-old half sibling[2] due to Mother's "chronic and ongoing substance abuse problem." The detention report prepared by the social worker indicated Mother had tested positive for methamphetamine while pregnant with L.K. and declined an offer of outpatient substance abuse treatment at the time. L.K. was the first of Mother's six children who did not test positive for drugs at birth. Mother had 26 previous referrals to the Bureau, and "her history of illegal drug use dates back more than 25 years."

At the social worker's home visit with Mother three days after L.K.'s birth, Mother stated she and Father were " 'not together right now . . . he's back living in Oregon.' " After the petition was filed on February 6, 2013, indicating a last known address for Father in Valley Springs, California, Father filed a notification of mailing address form indicating his address was the same as Mother's.[3]

As to jurisdiction, Mother submitted the matter to the court based on the social worker's report. The court sustained the failure to protect allegation based on Mother's chronic and ongoing substance abuse and ordered L.K. placed with Mother under a family maintenance plan. The court reserved disposition findings as to Father, but ordered visitation to be arranged for Father once a month.

In May 2012, the court ordered that L.K. remain in the physical custody of Mother and Father, and adopted a case plan for Father that required him to engage in substance abuse testing and a 12-step program.

---

[2] These writ petitions involve only L.K.

[3] In an apparent error, Father indicated his house number had one digit different from Mother's.

2

In August 2012, the Bureau filed a supplemental petition alleging Mother was not in compliance with her family maintenance plan and Father had tested positive for methamphetamine. Mother informed the social worker Father was " 'not at her home a lot,' " and would soon be leaving her home to " 'turn himself in due to an outstanding warrant in Grass Valley.' " The court ordered L.K. detained.

At the contested jurisdictional hearing on the supplemental petition in October, the court ordered Father to be "drug tested forthwith." The test was positive for opiates. In November, the court sustained the allegations of the supplemental petition and set a dispositional hearing for February 2013.

The December 2012 disposition report indicated the Bureau had initiated an "absent search" to locate Father, and "the results are pending." On February 27, 2013, Father filed a notification of new mailing address. At the dispositional hearing the same day, the court ordered family reunification services and visitation for both parents. L.K. remained in out-of-home placement.

In the status review report for the August 7, 2013 hearing, the Bureau indicated Mother was making progress in her case plan, including testing negative for drugs. She had, however, been discharged from her outpatient program because "she was not meeting their requirements," and had been arrested on an outstanding warrant. There had also been two incidents in which L.K. was injured while in Mother's care, and an altercation at Mother's home between her father and brother for which police were called. Father had "not made himself available to the Bureau," and therefore had not completed any part of his plan.

Father failed to appear at the October 16, 2013 hearing, and the court ordered termination of his reunification services. The court ordered one hour per month visitation with L.K. for Father, and ordered continued reunification services to Mother.

In January 2014, Father filed a "Request to Change Court Order," seeking to have his reunification services reinstated. He indicated he had "completed multiple programs while in custody and has now been released." The court denied the request.

In the status report for the February 7, 2014 hearing, the Bureau reported Mother had obtained a part-time job and was in compliance with her reunification plan, with the exception of the counseling requirement. The Bureau recommended against returning L.K. to Mother's home based in part on four incidents involving L.K.'s health and safety. On two occasions, L.K. sustained injuries while in Mother's care, both involving injury to her face and around her eye. Mother reported L.K. simply tripped because she was learning to walk, and did not seek medical care. The foster mother brought L.K. to a doctor, who referred her to an eye specialist for further treatment. L.K. was also reported to "drag" her left foot, but Mother denied there was a problem, testifying "when I have her, she doesn't drag her leg." L.K. was referred to the Regional Center for the foot-dragging issue, as well as a "possible speech delay." L.K. also returned from a visit to Mother with a staph infection. Mother was "reportedly aware her older daughter had a staph infection when this visit occurred," but denied this to the Bureau. L.K. has asthma, but reportedly only needs to use her inhaler after visits with Mother. The foster mother reported L.K. smells like cigarette smoke after visits with Mother, though Mother denies smoking while L.K. is visiting and indicated she smoked only outside. There were also a number of disturbing incidents involving L.K.'s half brother, including a report Mother was seen hitting the boy and calling him a "stupid motherfucker" in a grocery store. Although Mother denied hitting him or calling him "stupid" the Bureau felt the incident reflected "a general lack of parenting skills."

On March 24, 2014, the court found substantial risk of detriment to L.K. if she were returned to Mother, and set a section 366.26 hearing.

DISCUSSION

**Substantial Evidence of Detriment**

Mother maintains no substantial evidence supports the court's finding that returning L.K. to her would create a substantial risk of detriment to the minor.

"When we review a sufficiency of the evidence challenge, we may look only at whether there is any evidence, contradicted or uncontradicted, which supports the trial court's determination. We must resolve all conflicts in support of the determination, and

4

indulge in all legitimate inferences to uphold the court's order. Additionally, we may not substitute our deductions for those of the trier of fact." (*Elijah R. v. Superior Court* (1998) 66 Cal.App.4th 965, 969.) Following a permanency review hearing, "the court shall order the return of the child to the physical custody of his or her parent or legal guardian unless the court finds, by a preponderance of the evidence, that the return of the child . . . would create a substantial risk of detriment to the safety, protection, or physical or emotional well-being of the child. . . ." (Welf. & Inst. Code, § 366.22, subd. (a).)

Mother claims the court erred in finding substantial risk of detriment because she had made significant progress with her case plan, remained sober as evidenced by drug testing, and had a "relapse recovery plan" for the first time. "Compliance with the reunification plan is certainly a pertinent consideration at the section 366.22 hearing; however, it is not the sole concern before the dependency court judge." (*Constance K. v. Superior Court* (1998) 61 Cal.App.4th 689, 704.) "[A] parent's compliance with the case plan is not a guarantee the child will be returned to the parent." (*In re Jacob P.* (2007) 157 Cal.App.4th 819, 830.)

The court acknowledged Mother's progress with her case plan and recent period of sobriety, but noted her "long history of drug abuse and addiction" and her repeated cycles of recovery and relapse. The court noted Mother "has an almost 30-year history of methamphetamine use . . . with periods of sobriety scattered in between," as well as 26[4] past referrals to the Bureau, and a criminal record. The court did not "give much credence" to the reports of injuries to L.K. after her falls, noting that "those things happen." It was concerned, however, with Mother's denial of L.K.'s reported leg dragging which had necessitated a referral to the regional center, and her admitted failure to read the Bureau's reports detailing L.K.'s asthma. The court also noted Mother's own counselor rated her "ability for self reflection" or insight as "5 1/2" on a scale of 10.

Given Mother's long history of repeated recovery and relapse, as well as her lack of awareness or outright denial of L.K.'s health issues, we conclude substantial evidence

---

[4] The court stated Mother had 29 prior referrals, but the initial detention report indicated there were 26 referrals.

5

supports the court's finding of substantial risk of detriment to L.K. if returned to Mother's custody.

### Reasonableness of Services

Both Mother and Father claim the Bureau failed to offer them reasonable reunification services.

The Bureau is required to formulate a plan for reunification of the child and parent and to provide to the parent reasonable reunification services "that [a]re designed to aid the parent or legal guardian in overcoming the problems that led to the initial removal and the continued custody of the child." (§ 366.21, subd. (e).) The " 'record should show that the supervising agency identified the problems leading to the loss of custody, offered services designed to remedy those problems, maintained reasonable contact with the parents during the course of the service plan, and made reasonable efforts to assist the parents in areas where compliance proved difficult (such as helping to provide transportation and offering more intensive rehabilitation services where others have failed).' [Citation.]" (*David B. v. Superior Court* (2004) 123 Cal.App.4th 768, 794.) Reunification services must be tailored to the unique needs of the particular family. (*Id.* at p. 793.)

We review a finding that reunification services were reasonable for substantial evidence. "[I]n reviewing the reasonableness of the reunification services provided by the Department, we must also recognize that in most cases more services might have been provided, and the services which are provided are often imperfect. The standard is not whether the services provided were the best that might have been provided, but whether they were reasonable under the circumstances." (*Elijah R. v. Superior Court, supra*, 66 Cal.App.4th at p. 969.)

### Mother's Reunification Services

Mother's reunification services included inpatient and outpatient substance abuse treatment programs, parenting classes, drug testing, and transportation of L.K. to twice-weekly visitation with Mother. Mother claims these reunification services were inadequate because "the service plan was not enough to support returning [L.K.] to the

6

mother's care, even though [she] did everything asked of her and complied with all aspects of her plan." She did not raise this issue in the juvenile court, thereby waiving it. (See *In re Kevin S*. (1996) 41 Cal.App.4th 882, 885–886.)

Even had Mother preserved the issue, the fact the court did not return L.K. to Mother's custody although she substantially completed all the reunification services offered does not demonstrate the services were inadequate. A parent must do more than simply complete the classes and services offered he or she must learn and internalize the information. Despite the services offered, Mother was unaware of or minimized L.K.'s serious health issues, including her "foot dragging" which necessitated a referral to the Regional Center and L.K.'s asthma. Mother acknowledged smoking, but insisted she did not smoke around L.K., despite reports that L.K. smelled of smoke and required asthma treatment only after returning from visits with her. Mother also denied exposing L.K. to another child's staph infection in her home. Mother's refusal to acknowledge these serious health concerns is not the result of a lack of reasonable services, but a result of a lack of insight and internalization of the services offered.

Mother also claims the court abused its discretion by refusing to extend reunification services because the services offered were inadequate.

Reunification services generally may be extended up to a maximum time period of 18 months. Section 361.5 provides in part: "court-ordered services may be extended up to a maximum time period not to exceed 18 months after the date the child was originally removed from physical custody . . . if it can be shown . . . that the permanent plan for the child is that he or she will be returned and safely maintained in the home within the extended time period. The court shall extend the time period only if it finds that there is a substantial probability that the child will be returned to the physical custody of his or her parent or guardian within the extended time period or that reasonable services have not been provided . . . ." (§ 361.5, subd. (a)(3).) The juvenile court has discretion to extend services beyond the 18-month limit if "the agency responsible for providing these services has, in the court's opinion, failed to make a reasonable effort to provide those services." (*In re Daniel G.* (1994) 25 Cal.App.4th 1205, 1213–1214.)

Mother, however, did not raise the issue in the juvenile court of extending services beyond 18 months.  Even had she, we have concluded substantial evidence supports the trial court's determination that reasonable services were provided, the only basis on which Mother now claims services should have been extended.  Accordingly, we also conclude the court did not abuse its discretion in refusing to extend those reunification services.

### Father's Reunification Services

Father also maintains he received inadequate reunification services.  He asserts the court ordered visitation on October 16, 2013, but "failed to facilitate any visitation between [L.K.] and her father throughout his period of confinement in the local jail, and after his release from custody . . . ."

On October 16, 2013, the court terminated reunification services to Father and ordered monthly visitation between L.K. and Father for one hour.  Relying on *In re Calvin P.* (2009) 178 Cal.App.4th 958 (*Calvin P.*), Father claims the failure to facilitate this ordered visitation demonstrates the reunification services were inadequate and necessitates a reversal of the order setting the section 366.26 hearing.

In *Calvin P.*, the minor was placed in his father's custody and the agency provided family maintenance services.  (*Calvin P.*, *supra*, 178 Cal.App.4th at pp. 961, 964.)  The court ordered reunification services for Mother, who was incarcerated, but "the Agency disregarded the order" and no services were provided.  (*Id.* at p. 961–962.)  The trial court nevertheless found the issue of whether the mother had received reasonable reunification services moot because the minor was placed with her father and it had ordered family maintenance services.  (*Id.* at p. 962.)  On appeal, the court vacated the order requiring family maintenance services for the mother, and ordered the Agency to implement the prior order for reunification services.  (*Id.* at p. 965.)

*Calvin P.* is simply inapposite. Father does not claim he did not receive the reunification services ordered—he asserts the failure to facilitate the visitation ordered by the court *after* his reunification services were terminated demonstrates the reunification services themselves were inadequate.  Any failure to facilitate visitation after

8

reunification services were terminated, however, has no bearing on whether the reunification services offered prior to termination were inadequate.

Father's final claim is the court made erroneous evidentiary rulings that denied him due process. The two sustained objections at issue were regarding the following questions to a social worker: " 'Did the Department provide visitation to him and his daughter while he was in custody?' " and " 'Are you aware of any order by the court that limited [Father's] visitation between himself and [L.K.] while he was in custody?' "

Assuming there was any error in these rulings, it was harmless. The Department "stipulate[d] that [Father] hasn't had a visit," rendering any error in regard to the first question harmless. And, after the second question, the court allowed the following question and answer: "Are you aware of any court order that limited [Father's] visitation," to which the response was "No," again rendering any error harmless.

### DISPOSITION

The petitions for extraordinary writ relief are denied on the merits. (See Cal. Const., art. VI, § 14; *Kowis v. Howard* (1992) 3 Cal.4th 888, 894; *Bay Development, Ltd. v. Superior Court* (1990) 50 Cal.3d 1012, 1024.) The requests for stay of the section 366.26 hearing are denied. The decision is final in this court immediately. (Cal. Rules of Court, rules 8.452(i), 8.490(b)(2)(A).)

_____
Banke, J.

We concur:

_____
Margulies, Acting P. J.

_____
Dondero, J.

9