Filed 11/19/14  In re Juan Z. CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| In re JUAN Z. et al., Persons Coming Under the Juvenile Court Law. | D065688 |
| SAN DIEGO COUNTY HEALTH AND HUMAN SERVICES AGENCY, | |
| Plaintiff and Respondent, | (Super. Ct. No. SJ11778A-E) |
| v. | |
| G.M., | |
| Defendant and Appellant. | |

APPEAL from orders of the Superior Court of San Diego County, Kimberlee A. Lagotta, Judge.  Affirmed.

Cristina Gabrielidis, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas E. Montgomery, County Counsel, John E. Philips, Chief Deputy County Counsel, and Dana C. Shoffner, Deputy County Counsel, for Plaintiff and Respondent.

Suzanne F. Evans, under appointment by the Court of Appeal, for Minors.

G.M. appeals the juvenile court's orders placing her five children with their maternal great-uncle, Rafael M.  G.M. also appeals the juvenile court's findings that

reasonable services had been provided to her by the time of the six-month review hearing. We affirm the orders.

## FACTUAL AND PROCEDURAL BACKGROUND

G.M. has a long history of involvement with child protective services. The San Diego County Health and Human Services Agency (the Agency) first filed petitions under Welfare and Institutions Code section 300, subdivision (a), (all statutory references are to the Welfare and Institutions Code) on behalf of G.M.'s oldest sons, Juan Z. and David Z., in March, 2007. The petitions were prompted by reports that G.M. stated she wanted to kill the children and was physically and verbally abusive to the boys, ages two and three at the time.

As a result, the juvenile court removed Juan and David from G.M.'s custody. The boys were placed in foster care and G.M. was provided with reunification services. At some time prior to this initial dependency Rafael and his wife, Emma M., obtained legal guardianship of the boys. During the guardianship, which began shortly after David's birth and lasted approximately two years, the boys lived with and were cared for by Rafael and Emma in Hemet, California.

During this dependency proceeding Rafael and Emma obtained de facto parent status. They also sought placement of Juan and David with them in Hemet. The Agency, however, wanted the children placed in San Diego, where G.M. lived, to better facilitate reunification. On the Agency's recommendation, the juvenile court placed the boys with a paternal cousin in San Diego. Rafael and Emma took them for weekend visits every other week and also expressed their willingness to adopt the minors if G.M. failed in her reunification efforts.

2

In July 2007 G.M. gave birth to a daughter, Rosie Z., who was also removed from G.M.'s custody and placed in foster care. Shortly after Rosie's birth, the paternal relatives caring for Juan and David asked for the boys to be removed from their home because of G.M.'s threatening and inappropriate behavior. The minors were then placed in a foster home while G.M. worked towards reunification. By the time of the 18-month review hearing in late 2008, the Agency recommended terminating G.M.'s parental rights and setting a permanency planning hearing. G.M. contested termination of her parental rights and the juvenile court set trial for February 2009.

Just before the trial, the Agency reversed course and recommended the boys be placed with G.M., that the family receive maintenance services and that the case be transferred to Orange County, where G.M. was then residing. At trial, the juvenile court continued the matter and G.M. began overnight visits with the boys. In April 2009 the court placed the three children with G.M., ordered family maintenance services and two supervised visits per month with Rafael and Emma, and transferred the case to Orange County.

The family remained out of the child protective system until June 20, 2013, when Riverside County Child Protective Services (Riverside CPS) filed petitions under section 300, subdivisions (a), (b) and (g), on behalf of Juan, David, and Rosie, who were ages nine, eight and five, respectively, at the time. Petitions were also filed on behalf of the children's two new siblings, A.Z. (two years old) and A.M. (four months) under section 300, subdivisions (b), (g) and (j). A.Z. has the same biological father as Juan, David and Rosie. Neither their father nor A.M.'s father is a party to this appeal.

3

The petitions alleged G.M. physically abused the three older children, that G.M. had a history of substance abuse and admitted to recent methamphetamine use, and that the two fathers failed to provide for or protect the minors. At the detention hearing, the juvenile court removed the children from G.M.'s custody, detained them in out-of-home care and ordered supervised visitation for G.M. The children were placed into two separate foster homes. Juan, David and Rosie were placed together in one home and the two younger children in another. Rafael and Emma came forward at the outset of the proceeding to express their willingness to care for the minors and Riverside CPS began the process of approving them for placement.

In advance of the jurisdiction and disposition hearing, G.M. told her social worker that she wanted to move to San Diego where she had a better support system. Riverside CPS then submitted its recommendation to the court that the case be transferred to San Diego. G.M. also told the Riverside CPS social worker she did not want the five minors placed with Rafael and Emma. She believed they had manipulated her into giving them a guardianship of Juan and David before the first dependency proceeding. G.M. requested the children be placed in the home of her sister, Johanna M., in San Diego. Riverside CPS began evaluating Johanna for placement.

At the jurisdiction and disposition hearing, the juvenile court in Riverside adopted Riverside CPS's recommendation and removed the children from G.M.'s custody, ordered reunification services and transferred the case to San Diego County. The juvenile court in San Diego accepted the case and the Agency began assessment of Johanna for placement of the children. The Agency also conducted interviews of the three oldest children, G.M. and Rafael, and discovered all five minors and G.M. had lived with Rafael

4

and Emma for the two years immediately preceding the dependency. Juan, David and Rosie told the Agency's social worked they wanted to live with Rafael and Emma. Rafael told the Agency he and Emma were willing to have all five minors placed with them and to adopt them if G.M. was unable to reunify. In October 2013 the juvenile court ordered the Agency to assess Rafael and Emma's home for placement. The court also ordered weekly visitation for G.M. and permitted the Agency to place the minors with an approved relative with the concurrence of minors' counsel.

In December, minors' counsel requested a special hearing to limit visitation with Johanna and G.M. According to the information filed by the minors' counsel, the Agency's social worker forced Juan and David to visit Johanna's home against their wishes. At the time of the special hearing in late December a weeklong visit at Johanna's home was underway. At the hearing, minors' counsel told the court Juan, David and Rosie were fearful of Johanna and her husband because they had seen them hit their own children. The Agency opposed the request to limit visitation. The Agency's social worker had been to Johanna's home during the minors' visits and indicated she had not seen anything of concern. The court granted the minors' request to terminate the visit. Additional concerns about Johanna's home were raised shortly thereafter when A.Z. and A.M. returned to their foster home from a 10-day visit at Johanna's house with scabies.

In its report for the six-month review hearing in February 2014, the Agency recommended additional reunification services for G.M. and continued placement of the minors in the two foster homes in Riverside County. During the review period, the Agency approved Johanna for placement of the five children, but minors' counsel did not provide its concurrence to the placement. The Agency also approved Rafael and Emma's

5

home for placement. As a result of this approval, minors' counsel filed a section 388 petition for modification seeking the placement of all five minors with Rafael and Emma. At the six-month review hearing, G.M. requested a trial on the issue of placement. She opposed the minors' petition to be placed with Rafael and Emma, and instead wanted the children returned to her care or placed with Johanna. The court set a trial on the issue of placement for March and ordered visitation with Rafael and Emma in the interim period.

Before trial, G.M. withdrew her request for placement and sought only continued reunification services and unsupervised visitation. At trial, the court heard the testimony of G.M., Juan, David, Rafael, Johanna and the Agency's social worker, Lidia Briano. Juan and David testified that during the time they lived with Rafael and Emma with their mother they were primarily taken care of by Rafael and Emma. Both also testified they wanted to live with Rafael and Emma. Juan and David testified they did not like visiting Johanna's home and feared Johanna would hit them because they had witnessed her hitting her own children.

Rafael testified Juan and David had lived with him and Emma under a guardianship from 2005 to 2007 and all five minors lived in their home with G.M. from 2011 to 2013. Rafael testified he and Emma took primary care of the children during these periods and that G.M. often left for weeks or months at a time. Rafael testified he and Emma were willing to provide long-term care for all five minors, but also supported G.M.'s reunification efforts.

Johanna testified she was also willing to provide care for all five minors and that she could facilitate frequent visitation for G.M., who by this time was living in Tijuana. She stated the children had been to her home every other weekend for visits. Johanna

6

believed the visits were positive and testified none of the minors had ever complained about being in her home. She denied that she or her husband physically abused their two children. Johanna also testified that her husband was in the military and had recently received orders to move to Washington State. Johanna was in the process of applying for jobs in Washington and planned to move the family there as soon as the end of the month, but no later than July.

Briano testified that G.M. was willing to relocate to Washington if the children were placed with Johanna so that she could continue her reunification efforts there. Briano also stated G.M. supported Johanna gaining permanent custody of the minors if she failed to reunify with the minors. Briano indicated the Agency supported placement of the children with Johanna eventually but, because it had learned of Johanna's plans to move, wanted the children to remain in their current foster homes until Johanna's plans were settled. The Agency did not support placement of the children with Rafael and Emma in Hemet because Briano felt continued placement outside the county would hinder G.M.'s reunification efforts. G.M. testified she did not want the minors placed with Rafael and Emma because Rafael undermined her relationship with them.

At the conclusion of the hearing the juvenile court found there was a change of circumstances based on the approval of Rafael and Emma's home for the placement of the five minors. The court then found that, on balance, it was in the best interests of all five minors to be placed in one home together with Rafael and Emma. The court acknowledged that keeping the children in Riverside County presented an inconvenience for G.M., but concluded placement there did not improperly damage G.M.'s reunification efforts, particularly in light of the fact that Rafael expressed commitment to supporting

7

G.M.'s reunification efforts, the minors currently resided in Riverside County, and the uncertainty surrounding placement with Johanna in San Diego. The court also found the Agency had provided G.M. with reasonable services. The court ordered all five minors placed with Rafael and Emma, and ordered two unsupervised visits and two phone calls each week for G.M. The court also ordered that placement with Rafael and Emma was contingent on Rafael's facilitation of G.M.'s reunification efforts and the visitation ordered by the court.

DISCUSSION

I

G.M. asserts the court abused its discretion by granting the minors' section 388 petition seeking placement with Rafael and Emma. She contends there was no change in circumstances justifying placement of the children with Rafael and Emma and that placement outside San Diego County was not in the best interests of the minors.

A

Under section 388, a party may petition the court to change, modify or set aside a previous court order. The petitioning party has the burden of showing, by a preponderance of the evidence, there is a change of circumstances or new evidence, and the proposed change is in the child's best interests. (§ 388; *In re Jasmon O.* (1994) 8 Cal.4th 398, 415-416.) Whether a previous court order should be modified and a change would be in the child's best interests are questions within the sound discretion of the juvenile court. (*In re Stephanie M.* (1994) 7 Cal.4th 295, 318; *In re Casey D.* (1999) 70 Cal.App.4th 38, 47.) The order will not be disturbed on appeal unless the court has exceeded the limits of legal discretion by making an arbitrary, capricious or patently

8

absurd determination. When two or more inferences reasonably can be deduced from the facts, we have no authority to reweigh the evidence or substitute our decision for that of the juvenile court. (*In re Stephanie M.*, at pp. 318-319.)

B

G.M. has not shown the court's placement determination constituted an abuse of discretion. She argues there was no changed circumstance because Rafael and Emma were willing to have the minors placed with them from the outset of the case. This argument is without merit. The changed circumstance was not Rafael and Emma's willingness to have the minors placed with them, but the Agency's recent approval of them for placement.

With respect to the court's best interest finding, G.M. argues placing the children in Rafael and Emma's home was not in the minors' best interests because it would thwart her efforts at reunification. At the time of the six-month review hearing, however, the minors were already residing outside San Diego County and there was no viable alternative placement available in San Diego. The Agency supported placement of the minors in San Diego, but at the time of the hearing the only home approved for placement there was Johanna's. Because Johanna indicated she would be moving to Washington in the near future, and it was unclear whether G.M. would be moving as well, the Agency did not support placement in Johanna's home until those plans were more concrete. Given these circumstances the juvenile court's decision to place the five minors together with Rafael and Emma, who were committed to adopting all five children should G.M. fail in her reunification efforts rather than keeping the minors in two separate foster homes in Riverside, did not constitute an abuse of discretion.

9

## II

G.M. also argues the court erred by finding reasonable services had been provided because she received inadequate visitation with the minors.

## A

Whenever a minor is removed from parental custody, the court must order reunification services for the parents. (§ 361.5.) The purpose of reunification services is to remedy the problems that led to the minor's removal. (*In re Ronell A.* (1996) 44 Cal.App.4th 1352, 1362; *M.V. v. Superior Court* (2008) 167 Cal.App.4th 166, 173.) Services are considered reasonable if the child welfare agency has " 'identified the problems leading to the loss of custody, offered services designed to remedy those problems, maintained reasonable contact with the parents during the course of the service plan, and made reasonable efforts to assist the parents . . . .' " (*In re Alvin R.* (2003) 108 Cal.App.4th 962, 972.)

"In almost all cases it will be true that more services could have been provided more frequently and that the services provided were imperfect. The standard is not whether the services provided were the best that might be provided in an ideal world, but whether the services were reasonable under the circumstances." (*In re Misako R* (1991) 2 Cal.App.4th 538, 547.) We review the court's findings as to the adequacy of a reunification plan and the reasonableness of the Agency's efforts for substantial evidence. (*In re Julie M.* (1999) 69 Cal.App.4th 41, 46; *Angela S. v. Superior Court* (1995) 36 Cal.App.4th 758, 762.)

## B

Contrary to G.M.'s assertions, substantial evidence supported the juvenile court's finding that the Agency provided her with adequate visitation. G.M. complains she "did not have visitation with her children for roughly two months - September and October 2013." During this time, however, the case was being transitioned to San Diego from Riverside as a result of G.M.'s decision to leave Riverside. As discussed above, the dependency proceeding originated in June 2013 in Riverside County, where G.M. and the minors lived at the time. From the inception of the case until August 2013 G.M. had supervised visitation with the minors twice each week.

Once G.M. reported in October she was unable to visit the minors in Riverside because she did not have transportation, the court ordered weekly visitation for G.M. with the Agency's assistance. Beginning in October, the Agency facilitated visitation in San Diego through the minors' foster parents, who brought them to Johanna's home every other weekend and on holidays, and where G.M. visited the minors regularly. Additionally, when counsel for Juan, David and Rosie requested their visitation with Johanna be limited, possibly to the detriment of G.M.'s ability to see them, the Agency opposed the request. At the time of the review hearing, the Agency supported placement of the minors in San Diego to facilitate G.M.'s reunification efforts, specifically her ability to visit them more frequently.

Further, even if the Agency could have done more to facilitate visitation in the two months immediately following her move to San Diego, the challenged order provided G.M. with six more months of reunification services, including twice weekly unsupervised visits and phone calls. The court's orders also specifically conditioned the placement of the children with Rafael and Emma on their assistance in facilitating this

11

visitation.  Under the circumstances of this case, sufficient evidence supported the court's finding that reasonable services, including adequate visitation, were provided to G.M. (See *Elijah R. v. Superior Court* (1998) 66 Cal.App.4th 965, 969 ["The standard is not whether the services provided were the best that might have been provided, but whether they were reasonable under the circumstances"].)

DISPOSITION

The orders are affirmed.

_____<br>McINTYRE, J.

WE CONCUR:

_____
McCONNELL, P. J.

_____
O'ROURKE, J.