Filed 7/15/16  S.G. v. Superior Court CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| S.G., | |
| Petitioner, | E065758 |
| v. | (Super.Ct.No. SWJ1400072) |
| THE SUPERIOR COURT OF RIVERSIDE COUNTY, | OPINION |
| Respondent; | |
| RIVERSIDE COUNTY DEPARTMENT OF PUBLIC SOCIAL SERVICES, | |
| Real Party in Interest. | |

ORIGINAL PROCEEDINGS; petition for extraordinary writ.  Timothy F. Freer, Judge.  Petition denied.

Charles Casey for Petitioner.

No appearance for Respondent.

Gregory P. Priamos, County Counsel, Julie Koons Jarvi, Deputy County Counsel for Real Party in Interest.

## FACTUAL AND PROCEDURAL HISTORY

Petitioner S.G. (mother) has filed a petition for extraordinary writ under California Rules of Court, Rule 8.452, from the orders denying her reunification services and setting a hearing under Welfare and Institutional Code[1] section 366.26.

On October 5, 2015, real party in interest Riverside County Department of Public Social Services (the Department) filed a section 300 petition on behalf of the child, J.F. (the child). Mother had a history of drug abuse and engaging in domestic violence with E.F. (father; collectively, parents).[2] The child was born in September 2015; he was mother's fifth child. When the child was born, his siblings were dependents of the court. The Department filed an amended petition on October 7, 2015. The child was placed in foster care.

As to the child's siblings, an immediate response referral was received on January 18, 2014, indicating that mother gave birth to baby who tested positive for amphetamines. Mother received limited prenatal care. On January 22, 2014, a section 300 petition was filed and the child's siblings were detained. At the contested jurisdiction/dispositional hearing on April 16, 2014, the children were returned to mother's care. She was provided with family maintenance services.

On July 16, 2014, the child's siblings were detained again after the Hemet Police Gang Task Force responded to parents' home for a probation compliance check regarding

---

[1] All statutory references are to the Welfare and Institutions code unless specified.

[2] Father is not a party to this writ petition

2

father. Parents were not home but the child's four siblings were home with the maternal grandparents. The task force found methamphetamine, a revolver, and ammunition—all accessible to the children. The home was unsanitary, with animal feces on the floor and an infestation of cockroaches. There was an abundance of clutter both inside and outside of the home. Law enforcement stated that it was one of the worst homes seen as far as being unsafe for children.

On July 21, 2014, the children were again detained from mother. On November 14, 2014, the juvenile court found true the allegations stated in the amended petition on November 10, 2014. The child's siblings were found to come within section 300, subdivision (b). Family reunification services were ordered for mother. On June 19, 2015, mother's services were terminated.

Father had been incarcerated for a parole violation and was released from jail in July 2015. He was looking for work and was doing odd jobs. Mother reported that father had not completed any services. The social worker expressed concern to mother about father and his failure to make progress in completing his case plan. Parents were living together with the paternal grandmother until they found their own home.

In this case, on October 8, 2015, the juvenile court detained the child. The court ordered a hair follicle test for mother. The protective custody warrant was recalled. On October 13, and 16, 2015, the court again ordered the child detained.

In the interim, sexual abuse allegations against father were pending as to sibling, E.S. The Department received an emergency response referral with allegations of sexual

abuse and general neglect on August 25, 2015. E.S. disclosed during the investigation that father had touched her inappropriately.

The social worker made an appointment with mother to interview her. Mother cancelled the interview and failed to reschedule. In an interview on February 2014, mother stated she had smoked marijuana from the age of 15 and experimented intermittently with methamphetamine. Mother consistently visited the child twice a week.

Mother had received over 12 months of reunification services, which included case management, random drug testing, drug treatment, parenting classes, and individual counseling. Mother had been slow to start her services, but eventually successfully completed a parenting program as well as both inpatient and outpatient substance abuse programs. Mother tested negative for substances in October 2015.

In January 2016, the social worker learned that father was incarcerated for violating probation. He was sentenced to approximately 16 months. Parents visited the child together until father's incarceration. Several visits from December 2015 to March 2016 did not occur due to various reasons. As of April 4, 2016, mother had not attended visits since before March 4, 2016. She did not make any attempt to arrange a visit during that time.

In a report filed on January 28, 2016, the social worker reported that mother had not engaged in any services. Mother had also not attended an interview with the social worker, the purpose for which was to provide support for mother's claim that she made positive changes in her life in order to provide a safe and secure environment for the

4

child. In March 2016, mother tested negative for substances according to a hair follicle test. Mother did not submit to a urinalysis test for substances, even though the testing site received a referral for both a hair follicle and urinalysis test. Mother was a "no show" for the urinalysis test.

On April 11, 2016, the juvenile court held a contested jurisdictional hearing as to the child, a contested selected and implementation hearing as to the child's siblings, and hearings on two section 388 petitions relating to the child's siblings. At the hearing, mother provided stipulated testimony that she submitted to both the urinalysis and hair follicle test, and that she was never convicted of battery. Instead, she was convicted of shoplifting, a misdemeanor, in May 2012. She never had to serve time and she was on formal probation.

The juvenile court terminated mother's parental rights as to E.S. The court also found that the child came within section 300, subdivisions (b) and (j), and adjudged the child a dependent of the court. The court removed the child from mother's custody. Services were denied to mother under section 361.5, subdivisions (b)(10) and (b)(11). The court reduced visitation to twice per month. The court set a section 366.26 for August 9, 2016.

On April 13, 2016, mother filed a notice of intent to file a writ petition. On May 19, 2016, mother filed the instant petition for extraordinary writ.

5

## DISCUSSION

In her writ petition, mother contends the court erred in finding that section 366.26, subdivisions (b)(10) and (b)(11), applied to deny her services. For the reasons set forth below, we deny mother's writ and affirm the juvenile court.

"We affirm an order denying reunification services if the order is supported by substantial evidence." (*In re Harmony B.* (2005) 125 Cal.App.4th 831, 839; see also *Elijah R. v. Superior Court* (1998) 66 Cal.App.4th 965, 971.) In applying the substantial evidence test, we presume the court made the proper order and consider the evidence in the light most favorable to the ruling. (*Sheila S. v. Superior Court* (2000) 84 Cal.App.4th 872, 880.) We do not "resolve conflicts in the evidence, pass on the credibility of the witnesses, or determine where the preponderance of the evidence lies. [We merely determine whether] there is any substantial evidence, whether or not contradicted, which will support the conclusion of the trier of fact." (*In re Walter E.* (1992) 13 Cal.App.4th 125, 139-140.)

The juvenile court is required to order family reunification services whenever a child is removed from the custody of his or her parent, unless the court finds by clear and convincing evidence that one of the exceptions set forth in section 361.5, subdivision (b), applies. Section 361.5, subdivision (b), permits the juvenile court to bypass services to parents whose circumstances demonstrate that provision of services would be futile and only would delay permanence and stability for a child who was removed from the parent. (*Renee J. v. Superior Court* (2001) 26 Cal.4th 735, 744; *In re Baby Boy H.* (1998) 63 Cal.App.4th 470, 478.)

6

Specifically, section 361.5, subdivision (b)(10), provides that a court may deny services if there is clear and convincing evidence: "That the court ordered termination of reunification services for any siblings or half siblings of the child because the parent . . . failed to reunify with the sibling or half sibling after the sibling or half sibling had been removed from that parent . . . and that, according to the findings of the court, this parent . . . has not subsequently made a reasonable effort to treat the problems that led to removal of the sibling or half sibling of that child from that parent . . . ."

Subdivision (b)(11) of section 361.5, provides that a court may deny services if there is clear and convincing evidence: "That the parental rights of a parent over any sibling or half sibling of the child had been permanently severed, and this parent is the same parent . . . and that, according to the findings of the court, this parent has not subsequently made a reasonable effort to treat the problems that led to removal of the sibling or half sibling of that child from the parent."

Overwhelming evidence supported the juvenile court's findings under section 361.5, subdivision (b)(10) and (b)(11). It was undisputed that reunification services, as well as parental rights, had been terminated with respect to the child's sibling. As provided above, the parental rights of mother and father were permanently severed as to E.S. Indeed, mother does not dispute that the first prong of either subdivision (b)(10) or (11) of section 361.5 has been satisfied.

Rather, mother contends the juvenile court erred in not concluding that mother made "reasonable efforts" to treat the problems that led to the removal of the child. We disagree. While every effort should be made to save a parent's relationship with a child

7

despite the parent's history of substantial misconduct (*Renee J. v. Superior Court* (2002) 96 Cal.App.4th 1450, 1464), the "no-reasonable effort" clause was not intended to provide a parent such as mother another opportunity to address an underlying problem when she had many opportunities and failed to do so. (*In re Harmony B.*, *supra*, 125 Cal.App.4th at p. 843.) Instead, it was intended to mitigate an otherwise harsh result in the case of a parent who, having failed to reunify, subsequently worked toward correcting the underlying problem. (*Id.* at p. 842.)

*R.T. v. Superior Court* (2012) 202 Cal.App.4th 908 (*R.T.*) is instructive. In *R.T.*, the minor was removed from his parents' care after his father was arrested for domestic violence and the mother admitted drug and alcohol use. The parents had previously failed to reunify with the minor's sibling, P.T., who was removed based on the parents' substance abuse and chronic homelessness. (*Id.* at p. 911.) The parents had made only minimal efforts to engage in reunification services in P.T.'s case. But, two months after the minor's removal, the mother moved to a safe residence, separated from the father, was following mental health recommendations, and had started attending a drug treatment program and 12-step meetings. Notwithstanding these efforts, the juvenile court ordered bypass of reunification services, citing the termination of parental rights in P.T.'s case and finding the parents had not made reasonable efforts to treat the underlying problems. (*Id.* at pp. 911-913.)

The Court of Appeal explained: "We do not read the 'reasonable effort' language in the bypass provisions to mean that any effort by a parent, even if clearly genuine, to address the problems leading to removal will constitute a reasonable effort and as such

8

render these provisions inapplicable.  It is certainly appropriate for the juvenile court to consider the duration, extent and context of the parent's efforts, as well as any other factors relating to the quality and quantity of those efforts, when evaluating the effort for reasonableness.  And while the degree of progress is not the focus of the inquiry, a parent's progress, or lack of progress, both in the short and long term, may be considered to the extent it bears on the reasonableness of the effort made.  [¶]  Simply stated, although success alone is not the sole measure of reasonableness, the measure of success achieved is properly considered a factor in the juvenile court's determination of whether an effort qualifies as reasonable." (*R.T.*, *supra*, 202 Cal.App.4th at pp. 914-915, italics omitted.)

In concluding that substantial evidence supported the juvenile court's finding, the *R.T.* court observed:  "There is no evidence that mother made any effort to address her substance abuse issues after minor was returned to her, until minor was once again removed and bypass was recommended.  By then, mother had been using drugs again for nearly a year, if not longer, and minor was once again languishing without proper care as a result.  There is no evidence in the record that mother, in the month or two of services following minor's second removal, had engaged in these services in any meaningful way.  [Citation.]  In any event, the juvenile court properly could conclude this recent effort, even assuming the effort were substantiated, was simply too little, too late." (*R.T.*, *supra*, 202 Cal.App.4th at p. 915, italics omitted.)

In this case, the child's siblings were removed from mother's care due to substance abuse.  Moreover, mother's home was unsanitary.  After the child was born,

9

the social worker reported that mother made no apparent positive changes in spite of completing some services. Mother only became active in participating in her case plan after learning she was pregnant with the child. Also, there was no evidence in the record that mother engaged in these services in any meaningful way. At the hearing on review, the juvenile court determined that it was "inaccurate to come out and say that [mother] reasonably addressed the issues." The court stated that the parents' continued pattern of using controlled substances just "goes on and on and on." "[A]lthough success alone is not the sole measure of reasonableness, the *measure* of success achieved is properly considered a factor in the juvenile court's determination of whether an effort qualifies as reasonable. (*R.T.*, *supra*, 202 Cal.App.4th at p. 915.)

Here, father had not completed any aspect of his case plan, and indicated he took a break from services after becoming aware mother was pregnant with the child. Despite father's lack of compliance, mother continued to have a relationship with him. They lived together when the child was taken into protective custody. After the child was detained, parents visited the child together until father was incarcerated. Mother continued to associate with father even though he completed no aspect of his case plan.

Mother failed to participate in a urinalysis drug test even though she submitted to a hair follicle test. As the juvenile court observed, the only reasonable inference was that mother knew "what was going to happen. She knew that [the substances] wouldn't likely show up on the hair follicle, but if she tested on the urinalysis test she was going to get dinged. She knew." Mother's visitation with one of her other children in February 2016 had to be terminated early because mother "smelled of methamphetamine" which made

10

the supervisor of the visitation sick. Soon thereafter, mother also stopped visiting the child and made no effort to set up more visits. At the time of the hearing on review, mother had not visited with the child in over a month.

Prior to father's incarceration, mother informed the Department that father had moved out of the home. She also claimed she had no idea where he was staying. However, mother made these statements even though she and father visited the child together. The social worker had "significant concern" about mother's truthfulness.

Moreover, mother failed to contact the Department to address the allegations contained in the petition as to the child, and failed to follow through with rescheduling an appointment with the social worker. From approximately November 2015 to April 2016, mother did not engage in any services. During the same time, mother failed to participate in an interview with the social worker to provide support for her claim that she made positive changes in her life and that she was able to provide and safe and secure environment for the child.

In sum, mother smelled of methamphetamine in February and soon after that, stopped all visitation with the child. She failed to submit to a urinalysis substance abuse test less than a month before the hearing. She continued a relationship with father despite his lack of compliance with his case plan. She failed to meet with the social worker to address the allegations in the petition. Hence, the record shows that mother did not make a reasonable effort to treat the problems that led to the child's siblings' removal. The purpose of the reasonable effort prong of section 361.5, subdivision (b)(10), is not to create further delay for a child by allowing a parent, who up to that point has not

11

reasonably addressed his or her problems, another opportunity to do so. (*In re Harmony B.*, *supra*, 125 Cal.App.4th at p. 843.) Viewing mother's history in its totality, we conclude there is substantial evidence to support the juvenile court's finding that mother did not make a reasonable effort to treat the problems that led to the removal of the child's siblings from her care. Accordingly, the juvenile court did not err when it denied reunification services to mother under section 361.5, subdivisions (b)(10) and (b)(11).

## DISPOSITION

The petition for extraordinary writ is denied.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

MILLER
J.

We concur:

RAMIREZ
P. J.

McKINSTER
J.

12