Filed 5/24/21  In re A.C. CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Yolo)

----

| | |
|---|---|
| In re A.C. et al., Persons Coming Under the Juvenile Court Law. | C093009 |
| YOLO COUNTY HEALTH AND HUMAN SERVICES AGENCY,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>R.C.,<br><br>Defendant and Appellant. | (Super. Ct. Nos. JV20193242, JV20193243) |

Mother, R.C., appeals following the juvenile court's October 26, 2020, visitation order, which denied her visitation with A.C. based upon a finding of detriment and provided her one hour per week of Zoom visitation with Z.C. with discretion to increase visitation and/or conduct visitation in person.  Mother argues:  (1) the juvenile court did

1

not have jurisdiction during the reunification phase to deny visitation based upon that court's finding of emotional detriment to A.C.; (2) substantial evidence does not support the court's detriment finding; and (3) the juvenile court abused its discretion providing for Zoom visitation with Z.C. We affirm the juvenile court's order.

## FACTS AND HISTORY OF THE PROCEEDINGS

Rather than restate the lengthy recitation of facts and procedural history from mother's related appeal in case No. C092444, we hereby incorporate it and its associated record by reference. We will recount only subsequent proceedings that have been included in the record of this appeal.

On September 28, 2020, mother filed form JV-180, a request to change order, seeking to modify the court's previous order that visitation would be "at the discretion" of A.C. and Z.C. Mother requested therapeutic visits and a minimum of three hours of supervised visitation per week. She argued that Z.C. had engaged in only three visits in the past two months and that the order as currently written thwarted reunification, was contrary to the best interests of the minors, and did not provide "reasonable services." As support for her motion, mother attached an e-mail from the minors' social worker detailing the five dates that Z.C. refused to visit and the three dates where visitation occurred.

On October 19, 2020, the court ordered the parties to appear on October 26, 2020, to discuss whether there should be an evidentiary hearing on mother's motion to change the visitation order. On October 26, 2020, the court held the hearing as scheduled. This hearing was attended by A.C., A.C.'s foster parents, the minors' counsel, counsel for the Yolo County Health and Human Services Agency (the Agency), CASA workers for A.C. and Z.C., the Agency's social worker, a FFA social worker, father's counsel, and mother with her counsel. Father's counsel requested that father's appearance be waived and stated that father did not wish to take a position on mother's request.

2

The court began the hearing by restating mother's request and the basis for it. The court then asked for input from the parties present, beginning with the minors' counsel, who said that the visitation order needed rewording, but that the order had been positive in allowing the children to determine whether they are ready to visit with their mother. The minors' counsel stressed that A.C. had articulately expressed that she was neither ready, nor willing, to visit with mother and that the mere thought of visiting mother inspired fear and anxiety. Accordingly, the minors' counsel requested the court make a finding of detriment that could be reviewed again in December during the 12-month review. A.C.'s CASA worker reiterated A.C.'s "great anxiety concerning her mother" that had resulted in recurring nightmares over her mother and being returned to mother. A.C. was feeling overwhelmed and traumatized by "her entire life with her mother." The CASA worker did not think it would be in A.C.'s best interests to have visits at this juncture, stating A.C. "needs to reconcile her own life before she is willing to accept her mom back in her life."

The Agency's attorney concurred, requesting a detriment finding for A.C. based upon harm to her emotional well-being. A.C.'s trauma and anxiety had increased to the point that the mere mention of possible visits with mother caused problems. A.C.'s social worker had actively encouraged A.C. to visit multiple times a month but even that encouragement had proven to be too much. The Agency recommended A.C. and mother needed to continue and progress in therapy before any visitation would be possible.

As to Z.C., the minors' counsel relayed that he had been having visits with mother lasting between 15 and 45 minutes and that having some control over whether to have the visits had been positive for him therapeutically. Recognizing mother's desire for consistency in those visits, the minors' counsel recommended one-hour of visitation per week to take place over Zoom. Zoom visitation was necessitated by the fact that the foster parents had an ailing parent underscoring the importance of following COVID restrictions. The minors' counsel recommended that the court order discretion to

3

transition to in-person visits if that could be done safely and in coordination with Z.C.'s therapist to assure his emotional well-being. Z.C.'s CASA worker added that Z.C. would like to visit with his siblings more frequently, but had not discussed his wishes for visitation with mother. The FFA social worker expressed that Z.C. wanted to visit his siblings three times a month, his grandparents once a month for an hour, and his mother once a month just to check in.

The Agency concurred with the request for Z.C. to receive one-hour weekly visits via Zoom with discretion to switch to in person visits if that is possible while following COVID protocols. As to mother's request for therapeutic visits, there was not a current therapeutic visit option available. The Agency argued it would not be beneficial to transport Z.C. for multiple hours each way in order to have a therapeutic visit. Further, it would be best for Z.C. to maintain the use of the same FFA social worker that Z.C. trusts, but the Agency was willing to assist mother with transportation so that visits could occur in the county where Z.C. resides. Z.C.'s current therapist would be available to assist with visitation.

Following this input from the other parties, mother's attorney argued that she was seeking to change the improper order that had put visitation at the discretion of the minors. She went on, "[v]isitation has to be either detrimental or a minimum ordered," and counsel did not believe there was adequate evidence to make a determination that visitation with A.C. would be detrimental. Counsel further argued that case law supported the use of joint therapy for children reluctant to visit and that without such efforts, the court should not make a detriment finding. Accordingly, mother requested therapeutic visits with both children.

As to Z.C., mother corrected that she was actually requesting six hours per week for visitation and that those visits occur in person. Mother was willing to comply with COVID guidelines. She further believed that "the foster family has been going on

4

vacation and taking [Z.C.] out." Thus, mother argued that in person visitation should be ordered with the understanding that mother would comply with the necessary guidelines.

In response to mother's argument, the minors' attorney argued that a jump to six hours a week would be too much and harmful for Z.C. and that the previously mentioned one hour a week via Zoom would be appropriate. Minors' attorney also argued that mother had failed to make adequate progress in mother's therapy to justify robust visitation. As to A.C., the minors' attorney emphasized her belief that the testimony presented established A.C.'s fear and anxiety inspired by the mere thought of visitation and that the court should make a finding of detriment and pause visitation until the upcoming hearing in December.

Mother's attorney argued that whether mother had progressed in services was irrelevant to visitation and requested that if the court was not inclined to order six hours of in person visits, that mother wanted a minimum of three hours per week in person.

No parties objected to the state of the evidence or requested the swearing of any witnesses in order to evaluate mother's change order request. Ultimately, the juvenile court determined visitation for Z.C. would be set for one-hour once a week via Zoom with discretion to increase the visits and/or transition those visits to in person as determined to be safe and if it was determined to be in Z.C.'s best interests after consultation with his attorney. The court then determined that it would be detrimental to A.C. to have visits with mother at this time. Mother's appeal is timely.

DISCUSSION

I

*The October 26, 2020 Order*

Mother argues against the propriety of the juvenile court's October 26, 2020, order made in response to her form JV-180 which was, perhaps, procedurally inappropriate. (See Kumli & Seiser, 1 Cal. Juvenile Courts Practice and Procedure (2021) § 2.140 [a Welf. &

5

Inst. Code, § 388 petition must be brought on a form JV-180]; undesignated section references are to the Welfare and Institutions Code.) While this may not have been the appropriate vehicle to challenge the juvenile court's visitation order, which mother attacked on a *legal* basis, to wit, for giving the minors complete discretion as to whether visitation with mother would occur, it ultimately makes no difference to the outcome here since the court modified the order.

As the moving party for a section 388 motion, mother had the burden of proving both a change in circumstances and that her request was in the best interest of the minors. (§ 388, subd. (a)(1); see, e.g., *In re L.S.* (2014) 230 Cal.App.4th 1183, 1193 [petitioner seeking to change an order under section 388, subdivision (a)(1) must prove by a preponderance of the evidence a change in circumstances and that the minor's best interests would be served by the proposed change].) A modification petition "is addressed to the sound discretion of the juvenile court and its decision will not be disturbed on appeal in the absence of a clear abuse of discretion." (*In re Jasmon O.* (1994) 8 Cal.4th 398, 415.) Mother has not shown an abuse of discretion. In fact, mother's request failed to show a *change* in circumstances at all. The only evidence attached to her request was a list of the days that Z.C. had elected to visit and not to visit. There was no information about whether this differed from prior visitation, nor was there any evidence presented as to A.C.

Nonetheless, the juvenile court did enter a modified order after the parties concurred that the language of the prior visitation order should be modified. While not expressly stated by the parties, it appears there was a recognition that a visitation order, which left whether the children would visit solely within the discretion of the children, was an invalid delegation of judicial authority. (*In re S.H.* (2003) 111 Cal.App.4th 310, 317-320.) As previously stated, the juvenile court's new order determined A.C.'s visitation with mother would be detrimental and that Z.C.'s visits should be limited to

6

one hour a week via Zoom with discretion to increase the visits and/or transition to in person visitation as determined to be safe and in Z.C.'s best interests. Because the court entered a new order despite mother's failed showing under section 388, we will review the propriety of that order utilizing the rules associated with the review of visitation orders generally.

A.      *The Finding of Detriment to A.C.*

We first dispose of mother's argument that the juvenile court was without jurisdiction to make a detriment finding during the reunification phase of the case because the court could not rely on emotional harm to A.C. Instead of determining whether mother could forfeit this argument as urged by the Agency or could be charged with invited error as mother's own attorney told the juvenile court "[v]isitation has to be either detrimental or a minimum ordered," we prefer to address this issue directly.

As this court previously decided in *In re T.M.* (2016) 4 Cal.App.5th 1214 at pages 1219-1220 (*In re T.M.*), a juvenile court is authorized to find detriment in reunification premised upon a child's emotional well-being. As we explained: "In addition to requiring a court to deny visitation if the child's safety is at risk, the plain language of section 362.1, subdivision (a) only requires visitation as frequently as the well-being of the child allows. Accordingly, if visitation is not consistent with the well-being of the child, the juvenile court has the discretion to deny such contact. As courts have explained, 'well-being' includes the minor's emotional and physical health. [Citations]." (*Id.* at p. 1219.) "This reading of the statute is consistent with dependency law's guiding principle of the well-being of the child: 'While visitation is a key element of reunification, the court must focus on the best interests of the children "and on the elimination of conditions which led to the juvenile court's finding that the child has suffered, or is at risk of suffering, harm specified in section 300." [Citation.]' [Citations.]" (*Id.* at p. 1220.)

7

We concur with *In re T.M.* that the physical injury limitation urged by mother in light of *In re C.C.* (2009) 172 Cal.App.4th 1481, would result in a juvenile court being " 'required to sit idly by while a child suffered extreme emotional damage caused by ongoing visits. . . . Visits of that nature are hardly consistent with the well-being of the children.' (*In re Brittany C*. [2011] 191 Cal.App.4th [1343,] 1357.)" (*In re T.M., supra*, 4 Cal.App.5th at p. 1220.) This is consistent with authority recognizing that "the parents' interest in the care, custody and companionship of their children is not to be maintained at the child's expense . . . ." (*In re S.H*, *supra,* 111 Cal.App.4th at p. 317.) Moreover, it is noteworthy that this is not a permanent determination. Reunification proceedings involve numerous hearings, including mother's upcoming 12-month review, wherein the court may reconsider its previous detriment determination based upon any new circumstances that may arise. (*In re T.M*., at p. 1220.) We see no reason to depart from our analysis in *In re T.M.,* and accordingly, we reject the argument that the juvenile court could not find detriment based upon emotional harm. (See also *In re Brittany C.*, at p. 1357 [determining "a court has the power to suspend visits when continuing them would be harmful to a child's emotional well-being"].)

Mother nonetheless argues that there is no substantial evidence supporting the juvenile court's detriment finding because: (1) this court should be precluded from using evidence in the record preceding the six-month review that was not appealed by the Agency and (2) the statements made at the change order hearing were not sworn testimony. We find these arguments disingenuous given that no parties objected to the state of the evidence or requested the swearing of any witnesses in order to evaluate mother's change order request at that hearing.

Nonetheless, we disagree and find substantial evidence supported the juvenile court's detriment finding. (See *In re T.M., supra*, 4 Cal.App.5th at p. 1220 [reviewing the court's detriment finding for substantial evidence].)

First, we disagree that the juvenile court's previous visitation order, which expressly conditioned visitation on the wishes of A.C. and Z.C., was an implicit finding that visiting mother without those limitations would not be detrimental. At the six-month review hearing the court ruled, "I do think all visitation for both [A.C.] and for [Z.C.], is completely up to them. If they don't want to visit with Mom, they don't have to. I'm not going to force either one of those children to visit with their mother if they don't want to." That the minors would be allowed to choose whether to visit with mother was further reflected in the court's minute order which stated, "visits with mother *are by children's choice*." (Italics added.)

While not technically a finding of detriment, this order does implicitly recognize that it would be harmful to force A.C. to visit with mother. Thus, we find *In re Meranda P.* (1997) 56 Cal.App.4th 1143 at page 1146 distinguishable because here, the Agency is not seeking to challenge the earlier order of the court in a subsequent appeal. Rather, the Agency is using relevant evidence from the court's file that was considered by the court in making its determination that visitation should be expressly conditioned on child's consent and which is equally relevant to support the propriety of the court's later detriment finding. We are unpersuaded that this is inappropriate.

Like the physical abuse and risk of emotional harm outlined in *In re T.M., supra*, 4 Cal.App.5th at pages 1220-1221, here, the record established mother's repeated physical abuse of A.C. (who was removed at age 14) since she was little. A.C. had been punched in the face, and hit with a spatula, hanger, and whip. A.C. did not think she would be safe living with mother. The one time A.C. had a visit with mother, A.C. displayed outward signs of fear through facial expressions and body language. A.C. repeatedly asked not to visit with mother and/or refused suggestions that she should visit. When the social worker discussed mother with A.C., she would become so upset that A.C.'s arms and legs would visibly shake. The propriety of respecting A.C.'s fear of mother is underscored by the previous visitation orders entered in this matter, which

9

recognized A.C.'s reluctance to visit and that any visiting would be therapeutic and only once A.C. had progressed to a point where visitation could begin.

A.C. began therapy in December 2019, where she was working on processing her trauma as well as learning self-awareness and relaxation techniques. Both A.C. and her therapist agreed she should continue her treatment. A.C. felt happy, stable, and comfortable at her placement. In June 2020, A.C. had expressed interest in a one-time therapeutic meeting with mother so that A.C. could tell mother how mother's actions impacted and continue to impact her. However, this meeting had not taken place as of the six-month review because mother's therapist recommended premeeting coaching with mother would be required so that mother would be able to "stay in her space, stay present and absorb what her child is going to say to her."

While mother once admitted hitting her children with a hanger twice a month, she predominantly denied ever having abused them and accused her children of lying. At the six-month review hearing, the court determined that mother had made minimal progress because even though mother engaged in services, she refused to take responsibility for her actions and continued to accuse her children (who were fearful of her) of lying. This constitutes substantial evidence supporting the court's determination that forcing A.C. to visit with mother would be detrimental to her emotional well-being, thus supporting the juvenile court's order.

Further, if we were to consider the various unsworn statements made at the October 26, 2020, hearing as offers of proof, those statements only support the propriety of the juvenile court's order. As discussed in the background section, the minors' counsel, A.C.'s CASA worker, and Agency's counsel all stressed A.C.'s articulate expression of her fear and anxiety concerning her mother. That fear and anxiety had grown to the point that merely discussing the possibility of visiting with mother caused A.C. fear and anxiety. A.C. suffered from recurring nightmares concerning her mother and was feeling overwhelmed and traumatized by "her entire life with her mother." For

these reasons, the minors' counsel and the Agency urged a detriment finding was necessary and could be revisited at the 12-month review hearing.

Finally, mother did not present any evidence that contradicted either the evidence in the record or the offers of proof concerning A.C.'s refusal to visit mother and/or A.C.'s fears and anxiety of visiting mother. Given this wealth of evidence to the contrary, mother has not shown the juvenile court's finding of detriment was unsupported by substantial evidence.

B.  *The Order Limiting Z.C.'s Visitation to One Hour Weekly Via Zoom*

We similarly reject mother's challenge to the juvenile court's order authorizing one hour of Zoom visits per week with discretion to increase the frequency and move to in-person visits if they could be conducted safely and in Z.C.'s best interests. This order essentially mirrors the visitation that was being conducted with Z.C. prior to his six-month review hearing, which we upheld against an unreasonable services challenge in mother's appeal from that hearing. We will  uphold the juvenile court's order here.

An order setting visitation is reviewed for an abuse of discretion (*In re Brittany C., supra*, 191 Cal.App.4th at p. 1356), which will not be disturbed, "unless the trial court made an arbitrary, capricious, or patently absurd determination." (*Ibid.* [citing *In re Stephanie M.* (1994) 7 Cal.4th 295, 318].)

Mother has failed to demonstrate that the court's determination was arbitrary, capricious, or patently absurd. We reject the mere suggestion that the foster family may have gone on a trip to an unknown location, at an unknown time, and under unknown circumstances, and that this somehow proves that failing to order in person visitation with Z.C. was an abuse of discretion.

Even assuming, as mother has previously argued, that "better" visitation, such as in person visits in an outdoor fora, could be provided consistent with COVID, perfection in services is not required. (*Elijah R. v. Superior Court* (1998) 66 Cal.App.4th 965, 969;

*In re Misako R.* (1991) 2 Cal.App.4th 538, 547.)  We discern no abuse in the juvenile court balancing mother's desire for in-person visits with the dangers associated with the COVID pandemic and Z.C.'s interest in maintaining his placement.  (See *In re R.R.* (2010) 187 Cal.App.4th 1264, 1284 [court's visitation order balancing the rights of parent with well-being of minor is reviewed for an abuse of discretion].)

DISPOSITION

The juvenile court's order is affirmed.


_____
HULL, Acting P. J.


We concur:



_____
MAURO, J.



_____
HOCH, J.